# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **MATT ALLISON,** | § | |
| | § | |
| *Plaintiff,* | § | **Case No. 1:24-cv-00950** |
| | § | |
| **v.** | § | |
| | § | |
| **REPUBLIC MORTGAGE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.      STATEMENT OF THE NATURE OF THE ACTION.............................1

II.     STATEMENT OF THE FACTUAL ALLEGATIONS .............................2

    A.     RMIC ................................................................................................2

    B.     The Plan And The GIA Investment Option ...................................3

    C.     Plaintiff's Imprudence Claim .........................................................6

III.    STATEMENT OF THE QUESTION PRESENTED .................................8

IV.     LEGAL ARGUMENT AND ANALYSIS .................................................8

    A.     Standard of Review ........................................................................8

    B.     ERISA's Duty Of Prudence ..........................................................10

    C.     Plaintiff's Claim for Breach of The Fiduciary Duty of Prudence Fails As A Matter Of Law .....................................................................................11

       *1. The Amended Complaint Improperly Relies On Hindsight* ......................12

       *2. The Amended Complaint Lacks the Meaningful Benchmarks Necessary To Support the Prudence Claim* .........................................................................16

V.      CONCLUSION ......................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 7

*Blair v. Young Phillips Corp.*,
    235 F. Supp. 2d 465 (M.D.N.C. 2002) ................................................. 8

*Bowser v. Gabrys*,
    No. 3:23-CV-00910-KDB-SCR, 2024 WL 3894056 (W.D.N.C.
    Aug. 21, 2024) ...................................................................................... 7

*Camera v. Dell Inc.*,
    No. A-13-CA-876-SS, 2014 WL 2767359 (W.D. Tex. June 17,
    2014) ................................................................................................ 6, 11

*Clark v. BASF Corp.*,
    142 F. App'x 659 (4th Cir. 2005) ........................................................ 7

*Davis v. Wash. Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) .............................................................. 13

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
    629 F. Supp. 3d 352 (M.D.N.C. 2022) .......................................... 10, 12

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ............................................................... 7

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) ............................................................... 8

*Griggs v. E.I. DuPont de Nemours & Co.*,
    237 F.3d 371 (4th Cir. 2001) ............................................................... 8

*Hanigan v. Bechtel Glob. Corp.*,
    No. 1:24-CV-00875, 2024 WL 4528909 (E.D. Va. Oct. 18, 2024) ............... 8, 15

*Kendall v. Pharm. Prod. Dev., LLC*,
    No. 7:20-CV-71-D, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ................... 12

ii

*Kirschbaum v. Reliant Energy*,
526 F.3d 243 (5th Cir. 2008) ...............................................................11

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ................................................................14

*Patterson v. Morgan Stanley*,
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019).......................................12

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
74 F.4th 171 (4th Cir. 2023) ....................................................9, 12, 13

*Roth v. Sawyer–Cleator Lumber Co.*,
16 F.3d 915 (8th Cir. 1994) .................................................................13

*Smith v. Shoe Show, Inc.*,
No. 1:20CV813, 2022 WL 583569 (M.D.N.C. Feb. 25, 2022).........15

*Stegemann v. Gannett Co.*,
No. 118CV325, 2023 WL 8436056 (E.D. Va. Dec. 5, 2023) ..............8

*Tatum v. RJR Pension Inv. Comm.*,
761 F.3d 346 (4th Cir. 2014) ............................................................8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).........................................................................2, 7

*Tullgren v. Hamilton*,
No. 1:22-CV-00856, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ........13, 14, 15

**Statutes**

29 U.S.C. § 1104(a)(1)(B) ...........................................................................9

29 U.S.C. § 1132(g) ...........................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................*passim*

Case 1:24-cv-00950-CCE-LPA    Document 20    Filed 02/18/25    Page 4 of 25

## I. STATEMENT OF THE NATURE OF THE ACTION

This case involves the guaranteed interest account ("GIA") investment option made available to participants in the ERISA-governed defined contribution retirement plan called The Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan (the "Plan"), which was sponsored by Defendant Republic Mortgage Insurance Company ("RMIC").[1]  The GIA contract was terminated in late 2023 in connection with a sale of RMIC to a third-party buyer. According to the Amended Complaint, the termination of the GIA contract resulted in a loss of principal in the GIA investments.

Based on speculation and hindsight, the Amended Complaint alleges that RMIC violated its fiduciary duty of prudence by permitting the GIA to remain an investment option in the Plan after December 2021 because several, contingent events *could possibly* occur in the future which *could possibly* cause a reduction of the market value of the GIA investments *if* a decision was made to terminate the GIA contract. Effectively, the Amended Complaint faults RMIC for not being clairvoyant, for failing to try to time the market, and for refusing to gamble with the assets of the Plan's allegedly only capital preservation investment option.  Plaintiff's

---

[1]     The Plan's sponsorship was assumed by RMIC's parent company, a retained affiliate in the Old Republic International Corporation controlled group, immediately prior to the sale of RMIC to a third-party buyer in 2024. The Plan has since been merged into the 401(k) plan sponsored by Old Republic International Corporation ("ORI"). (Am. Compl. [ECF No. 18] at ¶ 6).

allegations do not support a claim for breach of ERISA's fiduciary duty of prudence. Accordingly, the Amended Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STATEMENT OF THE FACTUAL ALLEGATIONS[2]

### A. RMIC

RMIC is a mortgage insurance company that protects lenders from losses due to defaults on first mortgages for residential properties. Like many other businesses exposed to the housing market, RMIC suffered significant losses associated with "the 2008 housing-driven financial crisis." (Am. Compl. at ¶ 19). Although RMIC continued to honor policies protecting lenders from losses associated with defaults on home mortgages, it stopped writing new policies in 2011. (*Id.* at ¶ 22). According to the Amended Complaint, between 2012 and 2022, ORI, RMIC's parent company, "guided RMIC through a calculated 'run-off' of the mortgage insurance business." (*Id.* at ¶¶ 21-22).

ORI was upfront about its goals with respect to RMIC. In October 2013, ORI stated in a press release that it intended to effectuate "a full and fair exit from the mortgage insurance market." (*Id.* at ¶ 25). In ORI's Form 10-K for the period ending December 31, 2018, ORI stated that RMIC's "standard model of forecasted results

---

[2]     For purposes of this Motion only, RMIC treats all of the factual allegation in the Amended Complaint as true.

extending through 2022 continues to reflect ultimate profitability for the book of business. In this regard a long-used RMIC standard model indicates that underwriting performance of the book of business should be positive over the run-off period assumed to end on or about December 31, 2022, ***though there is no guaranty of such an outcome***."[3] (Emphasis added).

Several years later, in January 2021, ORI reiterated that its "objective is to manage RMIC in an economically efficient and rewarding manner by: 1) selling the business to a cash buyer interested in its reactivation, ***or*** 2) holding it for a few years until nearly all of the insurance risk in force dissipates." (Am. Compl. at ¶ 27) (emphasis added).

Over two years later, in November 2023, it was announced that RMIC would be acquired by a third-party. (*Id.* at ¶¶ 8, 34). The sale closed in 2024. (*Id.* at ¶¶ 8, 35).

**B.    The Plan And The GIA Investment Option**

The Plan is a defined contribution plan governed by ERISA. Prior to the 2024 sale of RMIC and merger of the Plan into the ORI 401(k) Plan, eligible employees of RMIC, including Plaintiff, were offered the opportunity to participate in the Plan.

---

[3]    This Form 10-K is referenced in the Amended Complaint and may be considered by the Court when it rules on this Motion. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Am. Compl. at p.7, n.2 (citing https://www.sec.gov/Archives/edgar/data/74260/000007426019000016/ori201810-k.htm).

(*Id.* at ¶¶ 6-7). As a participant-directed plan under 29 U.S.C. § 1104(c), commonly known as a "404(c) plan," the Plan offered a variety of investment options with materially different risk and return characteristics. (*Id*. at ¶¶ 9-11). Plaintiff elected to invest 100% of the assets held in his Plan account in the Plan's GIA investment option. (*Id*. at ¶ 6).

According to the Amended Complaint, the "GIA was the Plan's investment option intended to preserve Plan participants' principal balances and provide a fixed rate of return." (*Id.* at ¶ 12). "The GIA was governed by a group annuity contract between the Plan and Massachusetts Mutual Insurance Company, which was later transferred to Empower Annuity Insurance Company." (*Id.* at ¶ 14). While the contract was in effect, Plan participants could move their account balances between the GIA and certain other investment options offered by the Plan at "contract value." (*Id.* at ¶ 15). However, in the event the contract governing the GIA investment option was terminated, the "contract value" would be adjusted "based on the market value of the underlying investments purchased by the insurance company using the assets in the GIA." (*Id.* at ¶ 17).

Plaintiff alleges that "because the GIA's underlying investments were almost entirely intermediate- and long-term fixed income securities, the most likely cause of such a decline in market value [of the GIA's underlying investments] would be an increase in interest rates." (*Id.*). That the value of the GIA's underlying investments

could decline is no surprise as no investment is risk-free.  As the Plan financial statements referenced in the Amended Complaint indicate, "[i]nvestment securities, including those invested in the group annuity contract, are exposed to various risks such as interest rate, market and credit risk. Due to the level of risk associated with certain investment securities, it is at least reasonably possible that changes in the values of investment securities will occur in the near term and that such changes could materially affect participants' account balances and the amounts reported in the statement of net assets available for benefits."[4]  *See* Ex. 1, Plan's 2020 Financial Statement at 12; *see also* Ex. 2, Plan's 2021 Financial Statement at 10-11.

The Financial Statements also disclosed that "it is possible that the Plan could be adversely affected in subsequent periods by future economic disruptions caused by the COVID-19 pandemic and the associated governmental responses."  *See id.* The Financial Statements further explain that the GIA contract value "also includes the effects of market value adjustments required in the event of a full or partial plan or contract termination." *See* Plan's 2021 Financial Statement at 11.

---

[4]      The Plan's financial statements are attached to the Plan's Form 5500s, which are filed annually with the Department of Labor and which are available to the public at https://www.efast.dol.gov/5500Search/ (last accessed on February 13, 2025) (enter "Republic Mortgage Insurance Company" in the Plan Sponsor Field).  For the Court's convenience, the financial statements filed with the Plan's Form 5500s for 2020 and 2021 are attached hereto as Exhibits 1 and 2.  The Court may consider these financial statements on this Motion because they are referenced in the Complaint.

The Amended Complaint alleges that the GIA contract was terminated in late 2023 in connection with the sale of RMIC to a third-party. (Am. Compl. at ¶¶ 35, 42). According to the Amended Complaint, the termination of the GIA contract resulted in a $1.3 million of loss principal in the GIA due to the interest rate environment at the time. (*Id*.).

### C.  Plaintiff's Imprudence Claim

Plaintiff alleges that the Plan's GIA investment option became imprudent no later than December 2021 because by that date RMIC was allegedly aware that a combination of future, contingent events ***could*** result in the loss of the value of the GIA ***if*** the GIA contract was terminated. According to the Amended Complaint, RMIC was on notice by January 2021 that ORI had stated that its objective was to manage RMIC "in an economically efficient and rewarding manner by: 1) selling the business to a cash buyer interested in its reactivation, ***or*** 2) holding it for a few years until nearly all of the insurance risk in force dissipates." (Am. Compl. ¶ 27). This information allegedly should have put RMIC on notice that RMIC should be treating the GIA as if it was on a liquidation timeline of less than three years. (*Id.* at ¶ 33).

Based on the assumption that the GIA investment was on a liquidation timeline of less than three years and that RMIC knew or should have known of this purported timeline, the Amended Complaint alleges that RMIC should have

terminated the GIA contract by December 2021 because "there is [allegedly] a well-known and constant risk that increases in inflation and/or interest rates can happen unexpectedly… [and while such] losses can generally be made back within three years, [] there is a material risk of loss of principal if a bond portfolio [such as the GIA portfolio] is subject to liquidation on a timeline that is shorter than 3 years."[5] (*Id.* at ¶ 33). Plaintiff further alleges that RMIC should have known that immediate termination of the GIA contract was needed by December 2021 because members of the Federal Reserve Bank ("FRB") had expressed their opinion that interest rates **might** go up by as much as two percent over the course of the next three years (*i.e.*, by the end of 2024).

Stated differently, Plaintiff claims that RMIC breached its fiduciary duty of prudence because it did not terminate the GIA contract by December 2021 based on the possibility that (1) RMIC could be sold at some point in the future; (2) any new owner of RMIC would not assume the Plan and GIA contract; **and** (3) increases in inflation and/or interest rates could occur within the next three years that **could** possibly result in a reduction of "the value of the underlying investments backing the GIA and a corresponding loss of principal to participants' GIA balances" **if** the GIA contract was terminated. (*Id.* at ¶ 31). Plaintiff is wrong as a matter of law.

---

[5]     Plaintiff does not support this conclusory allegation with any factual support.

Ultimately, Plaintiff's allegations reflect a fundamental misunderstanding of the fiduciary duty of prudence and confusion over what is (and is not) considered prudent action. Prudent fiduciaries are not judged based on 20/20 hindsight, do not speculate on future events, and are not required to "bet" plan assets on the likelihood of a potential sale of the company in the future. *See, e.g., Camera v. Dell Inc*., No. A-13-CA-876-SS, 2014 WL 2767359, at *4 (W.D. Tex. June 17, 2014) (finding that "Defendants, in their role as fiduciaries, simply were not required to bet the plan participants' assets on the likelihood of a going-private transaction occurring at some unknown point in the future.").[6]

## III. STATEMENT OF THE QUESTION PRESENTED

Whether Plaintiff's Amended Complaint [ECF No. 18] should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.

## IV. LEGAL ARGUMENT AND ANALYSIS

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires the

---

[6] Copies of all unpublished decisions cited in this brief are attached hereto as Exhibit 3.

plaintiff to plead sufficient facts and law to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a motion to dismiss, courts "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

When analyzing a Rule 12(b)(6) motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322. In particular, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint ... so long as the authenticity of these documents is not disputed." *Bowser v. Gabrys*, No. 3:23-CV-00910-KDB-SCR, 2024 WL 3894056, at *1 (W.D.N.C. Aug. 21, 2024). Relevant to this Motion, the Court may consider the Plan's Financial Statements and ORI's Form 10-K, because all of these documents are referenced in and relied upon by Plaintiff in the Amended Complaint and all of them are publicly available. *See Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005) (holding that a court may properly consider ERISA plan documents on a motion to dismiss); *Yates v. Municipal Mortg. & Equity, LLC,* 744 F.3d 874, 881 (4th Cir. 2014) ("[W]e take judicial notice of the content of relevant SEC filings and other publicly available documents included in the record."); *Hilton Worldwide, Inc. Glob. Benefits Admin. Comm. v. Caesars Ent. Corp.,* 532 B.R. 259, 269 (E.D. Va.

2015) (taking judicial notice of the Plan's Form 5500 and considering it for purposes of ruling on the motion to dismiss); *Smith v. Shoe Show, Inc.*, No. 1:20CV813, 2022 WL 583569, at *1 (M.D.N.C. Feb. 25, 2022) (same).

### B.     ERISA's Duty Of Prudence

ERISA's duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Because the content of the duty is defined based on the "circumstances then prevailing," "it is a context-specific duty." *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 182 (4th Cir. 2023) (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), and *Tatum*, 761 F.3d at 360 (referring to the analysis as a "totality-of-the-circumstances inquiry")).

"The duty of prudence is not results oriented"[7] and does not require "clairvoyance." *Reetz*, 74 F.4th at 182. The duty also does not demand that "a fiduciary—with the benefit of hindsight—make the optimal investment." *Id.* (citing

---

[7]     For this reason, any claim based on an allegation that RMIC's process for monitoring the GIA investment option was imprudent because the investment allegedly declined by 9% in value as a result of the termination of the GIA contract would fail as a matter of law. *See id.*; *see also Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915, 918 (8th Cir. 1994) ("the prudent person standard is not concerned with results.").

*DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007)). Instead, when determining whether a fiduciary breached its duty of prudence, the courts ask whether the fiduciary, "at the time they engaged in the challenged actions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 362 (M.D.N.C. 2022) (citing *Tatum*, 761 F.3d at 356).

### C. Plaintiff's Claim for Breach of The Fiduciary Duty of Prudence Fails As A Matter Of Law

To state a viable claim for a breach of the duty of prudence under ERISA, Plaintiff must allege facts sufficient to support a reasonable inference that (1) RMIC was a Plan fiduciary; (2) the GIA investment option was imprudent no later than December 2021; and (3) RMIC's failure to monitor and timely remove the allegedly imprudent GIA investment option from the Plan resulted in harm to the Plan. *See, e.g.*, *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 361 (4th Cir. 2014); *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379–80 (4th Cir. 2001); *Blair v. Young Phillips Corp.*, 235 F. Supp. 2d 465, 470 (M.D.N.C. 2002); *Stegemann v. Gannett Co.*, No. 118CV325, 2023 WL 8436056, at *8 (E.D. Va. Dec. 5, 2023).

To avoid dismissal, Plaintiff must, among other things, plead "direct facts demonstrating a deficient fiduciary process or circumstantial facts allowing a plausible inference that the fiduciaries' decision was outside of the 'range of reasonable judgments a fiduciary may make based on her experience and expertise.'"

*Hanigan v. Bechtel Glob. Corp.*, No. 1:24-CV-00875, 2024 WL 4528909, at *2 (E.D. Va. Oct. 18, 2024) (citing *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013).

The Amended Complaint does not contain any allegations about RMIC's process for selecting or monitoring the GIA investment option. Given that Plaintiff has not pled "direct facts demonstrating a deficient fiduciary process," his breach of fiduciary duty claim cannot survive a motion to dismiss unless Plaintiff pleads "circumstantial facts allowing a plausible inference that the fiduciaries' decision was outside of the range of reasonable judgments a fiduciary may make based on her experience and expertise." *See id.* As shown below, Plaintiff has failed to do so for a second time and his Amended Complaint should be dismissed with prejudice.

### 1. The Amended Complaint Improperly Relies On Hindsight

The prudence of a fiduciary's decision cannot be measured in hindsight. *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) ("whether a fiduciary's actions are prudent cannot be measured in hindsight"); *Roth v. Sawyer– Cleator Lumber Co.*, 16 F.3d 915, 917–18 (8th Cir. 1994) ("the prudent person standard is not concerned with results; rather it is a test of how the fiduciary acted viewed from the perspective of the time of the challenged decision rather than from the vantage point of hindsight."); *Kendall v. Pharm. Prod. Dev.*, LLC, No. 7:20-CV-

71-D, 2021 WL 1231415, at *3 (E.D.N.C. Mar. 31, 2021) (acknowledging that fiduciaries are not judged based on 20/20 hindsight). Instead, a fiduciary's actions are judged based on the information available to them at the time of the challenged action. *See, e.g., Garnick*, 629 F. Supp. 3d at 362; *see also Reetz*, 74 F.4th at 182. Thus, the fact that RMIC was sold in 2024 and the GIA contract was terminated during a high interest rate environment is irrelevant. The allegations that are relevant are those related to the information available to RMIC at the time it allegedly should have terminated the GIA contract (*i.e.*, what RMIC knew or should have known by December 2021).

Here, the Amended Complaint contends that RMIC knew or should have known that the GIA became imprudent by December 2021 because RMIC was allegedly aware that a series of potential, contingent events could occur in the future which could negatively impact the value of the assets underlying the GIA if the GIA contract was terminated. According to the Amended Complaint, RMIC allegedly knew as of December 2021 that:

- its parent company had reiterated its long-held position that its objective was to manage RMIC "in an economically efficient and rewarding manner by: 1) selling the business to a cash buyer interested in its reactivation, *or* 2) holding it for a few years until nearly all of the insurance risk in force dissipates;"

- terminating the GIA contract would result in a "market adjustment" to the Plan participant's GIA account balances;

- there is [allegedly] a well-known and constant risk that increases in inflation and/or interest rates can happen unexpectedly… [and while such] losses can generally be made back within three years, [] there is a material risk of loss of principal if a bond portfolio [such as the GIA portfolio] is subject to liquidation on a timeline that is shorter than 3 years";

- an "increase in interest rates would cause a predictable decrease in the value of the underlying investments backing the GIA investment option and a corresponding loss of principal to participants' GIA balances" *if* the GIA contract was terminated in connection with a sale of RMIC's business or termination of the Plan at a point in time when interest rates were higher; and

- members of the FRB had stated that interest rates might go up by as much as two percent over the course of the next three years (*i.e.*, by the end of 2024).

(Am. Compl. at ¶¶ 27-33). According to the Amended Complaint, "a prudent fiduciary of the Plan would have terminated the Plan's GIA contract by notice [no later than December 2021] so as to avoid the risk of loss of principal." (*Id*. at ¶ 34). Such allegations are improper and reflect "opportunistic Monday-morning quarter-

backing on the part of lawyers and plan participants who, with the benefit of hindsight, have zeroed in on the underperformance of [the GIA] investment option[]." *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019).

At its core, the Amended Complaint faults RMIC for failing to speculate on future, contingent events. The law, however, does not require a fiduciary to "bet" the Plan participants' assets on the likelihood of a transaction occurring, interest rates rising, and the GIA being terminated, all at some unknown point in the future. *See, e.g., Camera*, 2014 WL 2767359, at *4 (finding that "Defendants, in their role as fiduciaries, simply were not required to bet the plan participants' assets on the likelihood of a going-private transaction occurring at some unknown point in the future."); *see also Kirschbaum v. Reliant Energy*, 526 F.3d 243, 256 (5th Cir. 2008) ("A fiduciary cannot be placed in the untenable position of having to predict the future of [an investment's] performance."). RMIC's failure to terminate the GIA contract in December 2021 because of the possibility of a sale transaction, rising interest rates, and the termination of the GIA in the future simply does not support a prudence claim. This is especially true here as there is no allegation that a sale of RMIC at some point in the future would necessarily result in a termination of the Plan or the GIA contract. For these reasons, Plaintiff's hindsight-based imprudence claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## 2. *The Amended Complaint Lacks the Meaningful Benchmarks Necessary To Support the Prudence Claim*

The imprudence claim should be dismissed for the separate reason that it does not identify a meaningful benchmark. To "show that a prudent fiduciary in like circumstances would have selected a different fund [or investment] based on the ... performance of the selected fund [or investment], a plaintiff must provide a sound basis for comparison—a meaningful benchmark." *Tullgren v. Hamilton*, No. 1:22-CV-00856, 2023 WL 2307615, at *6 (E.D. Va. Mar. 1, 2023) (citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)); *see also Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) ("[A] complaint cannot simply make a bare allegation that ... returns are too low.... Rather, it must provide a sound basis for comparison—a meaningful benchmark.").

In this case, Plaintiff makes the conclusory allegation that "there were multiple capital preservation options that [RMIC] could have offered as a replacement to the GIA investment option (such as money market funds) that would not have exposed participants to the risk of a negative market value adjustment." (Am. Compl. at ¶ 35). Plaintiff contends that unidentified stable value funds offered by Galliard, T. Rowe Price, or Vanguard would have better met the needs of the Plan after 2021 "with respect to protection of principal, more favorable exit terms, and

competitive interest rates."[8] (*Id.* at ¶¶ 36-37). Plaintiff does not identify what the allegedly "more favorable exit terms" and "competitive interest rates" are in the Amended Complaint. Plaintiff further contends that unidentified money market funds offered by Goldman Sachs, Federated, Vanguard, or Fidelity would have also "met the needs of the Plan with respect to the protection of principal, liquidity, and competitive earnings."[9] (*Id.* at ¶¶ 36, 38).

Notably absent is any allegation as to how any of these Plaintiff- proposed alternatives performed between 2021 and 2024. Also absent is any indication as to which alleged specific funds Plaintiff is referring to as most, if not all, of the firms identified have more than one offering that can be described as a stable value fund or money market fund.[10] Further, Plaintiff fails to allege that any of these

---

[8] While not all stable value funds are the same, generally speaking, a stable value fund "is a portfolio of bonds that are insured to protect the investor against a decline in yield or a loss of capital." https://www.investopedia.com/terms/s/stable-value-fund.asp.

[9] While not all money market funds are the same, generally speaking, a money market fund "is a kind of mutual fund that invests in highly liquid, near-term instruments. These instruments include: cash, cash equivalent securities, and high-credit-rating, debt-based securities with a short-term maturity (such as U.S. Treasuries)." https://www.investopedia.com/terms/m/money-marketfund.asp.

[10] For example, as of the date of this filing, Galliard offers three stable value funds, see https://www.galliard.com/stable-value/, and Vanguard offers at least two – each of which have different investment goals. See https://institutional.vanguard.com/assets/corp/fund_communications/pdf_publish/us-products/fact-sheet/F6204.pdf and https://institutional.vanguard.com/assets/corp/fund_communications/pdf_publish/us-products/fact-sheet/F4945.pdf. Goldman Sacks, Federated, Vanguard and Fidelity also offer multiple types of money market funds. See

unidentified options could have been made available on the Plan's investment platform during the relevant time period. The allegations in the Amended Complaint fall well short of Plaintiff's burden of pleading meaningful comparators or benchmarks and warrants dismissal of the Amended Complaint with prejudice. *Smith v. Shoe Show, Inc.*, No. 1:20CV813, 2022 WL 583569, at *7 (M.D.N.C. Feb. 25, 2022) (dismissing the plaintiffs' prudence claim after finding that the complaint failed to specify exactly which particular passively managed funds should be added or why those funds can serve as meaningful benchmarks to the Plan's actively managed funds).

Moreover, a "meaningful benchmark" to the GIA investment option requires that the alternative investment option(s) share the same or similar "investment strategy, investment style, risk profile, or asset allocation" as the GIA investment option. *Tullgren*, 2023 WL 2307615, at *6 (finding that the "Amended Complaint makes no factual allegations demonstrating that the Comparator [Target Date Funds] are meaningful comparators to the BlackRock [Target Date Funds]"); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (comparator funds are

---

https://www.gsam.com/content/gsam/us/en/liquidity-solutions/fund-center/all-funds.html, https://www.federatedhermes.com/us/products.do, https://www.fidelity.com/mutual-funds/mutual-fund-spotlights/money-market-funds, https://investor.vanguard.com/investment-products/money-markets. The Court may take judicial notice of the existence of these funds because they appear on the companies' websites whose accuracy as to the products being offered cannot reasonably be questioned. Fed. R. Evid. 201.

"unlikely to be 'sound' or 'meaningful'" if they do not "hold similar securities, have similar investment strategies, [or] reflect a similar risk profile").

Plaintiff's Amended Complaint does not allege any facts that would support a reasonable inference that the GIA shared the same or similar "investment strategy, investment style, risk profile, or asset allocation" as the alleged stable value and money market fund comparators. Plaintiff's failure to do so requires dismissal of the imprudence claim. *See, e.g.*, *id.*; *Hanigan v. Bechtel Glob. Corp.*, No. 1:24-CV-00875, 2024 WL 4528909, at *3 (E.D. Va. Oct. 18, 2024) (dismissing plaintiff's imprudence claim after finding that the plaintiff "has not alleged facts that provide any meaningful benchmark from which the Court may assess whether her fiduciary breach claim is plausible."); *Lard v. Marmon Holdings, Inc.*, Case No. 1:22-cv-4332, 2023 WL 6198805, at *4-5 (E.D. Ill. Sept. 22, 2023) (rejecting comparison because "[s]imply pleading that the comparator funds 'match the goals' of [the at issue] funds … remains insufficient to establish the comparators as a 'meaningful benchmark'") (citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).

## V.     CONCLUSION

For the reasons set forth above, RMIC respectfully requests that Plaintiff's Amended Complaint [ECF No. 18] be dismissed pursuant to Rule 12(b)(6) and that RMIC be awarded its attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

Respectfully submitted, this 18th day of February, 2025.

**HOLLAND & KNIGHT LLP**

By:*/s/ Nishma Patel*
Nishma Patel
N.C. Bar No. 50922
1120 S. Tryon Street, Suite 900
Charlotte, North Carolina 28203
Phone: (980) 215-7797
Fax: 980) 215-7771
Email: nishma.patel@hklaw.com

Todd D. Wozniak (*special appearance*)
Regions Plaza, Suite 1800
1180 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Phone: (404) 817-8500
Fax: (404) 881-0470
E-Mail: todd.wozniak@hklaw.com

Lindsey R. Camp (*special appearance*)
Florida Bar No. 84138
777 South Flagler Drive, Suite 1900
West Palm Beach, Florida 33401
Phone: (404) 817-8439
Fax: (561) 650-8399
Email: lindsey.camp@hklaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY certify that on February 18, 2025, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Nishma Patel*
Nishma Patel


## CERTIFICATE OF WORD COUNT

I, Nishma Patel, certify that the foregoing Memorandum complies with the word count limits set forth in Local Rule 7.3(d).

*/s/ Nishma Patel*
Nishma Patel