## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MATT ALLISON, as representative of a class of similarly situated persons, and on behalf of the Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan,<br><br>       Plaintiff,<br><br>v.<br><br>REPUBLIC MORTGAGE INSURANCE COMPANY,<br><br>       Defendant. | Case No. 1:24-cv-00950-CCE-LPA |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# **TABLE OF CONTENTS**

| | | |
|---|---|---:|
| INTRODUCTION | | 2 |
| I. | BACKGROUND | 3 |
| | A. Description of the Action | 3 |
| | B. Procedural Background | 3 |
| | C. Discovery | 4 |
| | D. Settlement Agreement | 5 |
| | E. The Settlement Agreement | 5 |
| |     1. Settlement Amount | 5 |
| |     2. Retention of an Independent Fiduciary | 6 |
| |     3. Attorneys' Fees, Costs and Case Contribution Awards for Plaintiff | 6 |
| |     4. Release of Claims | 8 |
| |     5. Notice and Objections | 9 |
| II. | ARGUMENT | 10 |
| | A. The Settlement Class Meets All Requirements of 23(a) and (b)(1) and Should Be Certified 11 | 12 |
| |     1. Rule 23(a) Requirements Are Satisfied Here | 12 |
| |     2. Numerosity | 13 |
| |     3. Commonality | 13 |
| |     4. Typicality | 14 |
| |     5. Adequacy | 15 |
| |     6. The Settlement Class Should Be Certified Under Rule 23(b)(1) | 16 |
| | B. The Settlement Agreement Should Be Preliminarily Approved | 18 |
| |     1. Standards and Procedures for Preliminary Approval | 18 |
| |     2. The Settlement Satisfies the Fairness Prong | 19 |
| |         a. Negotiations Occurred at Arm's Length | 19 |
| |         b. There Has Been Sufficient Discovery | 21 |
| |         c. Class Counsel Are Experienced in Similar Litigation | 22 |
| |     3. The Settlement Satisfies the Adequacy Prong | 23 |
| |         a. The Strength and Weaknesses of Plaintiff' Case Support Approval | 23 |
| |         b. The Cost of Additional Litigation Supports Preliminary Approval | 24 |

         c.  Other Factors                                24

C.    The Court Should Appoint Plaintiff' Counsel as Class    24
       Counsel

D.    The Proposed Class Notice Program Should Be Approved    25

E.    A Final Fairness Hearing Should Be Scheduled    26

II.   CONCLUSION                                 27

## Table of Authorities

**Cases**                                                                                    **Page(s)**

*Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537     20
(N.D. Ill. 1982)

*Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451 (D. Md. 2014)   14-15

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir.     13
1993)

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006)      17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)                26

*Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95 (D. Mass. 2010)  16

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F.     19
Supp. 825 (E.D.N.C. 1994)

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-    19
16-3025, 2019 WL 3183651 (D. Md. July 15, 2019)

*In re American Capital Shareholder Derivative Litigation*, 2013    23
WL 3322294

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)  22

*In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md.  18
1983)

*In re Nortel Networks Corp. ERISA Litig.*, No. 3:03-MD-01537,      17
2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009)

*In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285 (D. Md.       13
2022)

*Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181 (W.D. Mo. 2009)      17

*Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL        8
434473 (D. Md. Jan. 28, 2020)

*LaRue v. DeWolff, Boberg & Associates, Inc.*, 458 F.3d 359 (4th Cir. 2006) — 11

*Massachusetts Mutual Life Ins. Co v. Russell*, 473 U.S. 134, 105 S. Ct. 3085 (1985) — 10-11

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) — 26

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) — 16

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) — 20

*S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) — 18

*Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140 (4th Cir. 2014) — 26

*Stegemann v. Gannett Co.*, No. 118CV325AJTJFA, 2022 WL 17067496 (E.D. Va. Nov. 17, 2022) — 17

*Wal-Mart Stores, Inc. v.*, 564 U.S. 338 — 13

*Yates v. NewRez LLC*, No. CV TDC-21-3044, 2023 WL 5108803 (D. Md. Aug. 9, 2023) — 13

**Statutes**

29 U.S.C. §§ 1109 & 1132(a)(2)-(3) — 3
29 U.S.C. § 1000 *et seq.* — 2
29 U.S.C. § 1009 — 10
ERISA § 409 — 10

**Rules & Regulations**

- *Fed. R. App. P. 28(f)* — 16
- *Fed. R. Civ. P. 23 25* — 26
- *Fed. R. Civ. P. 23(a)* — 12
- *Fed. R. Civ. P. 23(a)(1)* — 13
- *Fed. R. Civ. P. 23(a)(2)* — 13
- *Fed. R. Civ. P. 23(b)* — 10
- *Fed. R. Civ. P. 23(b)(1)* — 12
- *Fed. R. Civ. P. 23(b)(1)(B)* — 16
- *Fed. R. Civ. P. 23(b)(1) and/or (b)(2)* — 12
- *Fed. R. Civ. P. 23(g)* — 24

4

- *Fed. R. Civ. P. 23(g)(1)(A)*     25
- *Fed. R. Civ. P. 23(g)(1)(B)*     25
- *Fed. R. Civ. P. 23(h)*     26
- *Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003)*     2,7
- *Rule 26(f)* 434473 (D. Md. Jan. 28, 2020)     4

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2010)     21

Case 1:24-cv-00950-CCE-LPA     Document 39     Filed 12/02/25     Page 6 of 32

# INTRODUCTION

After vigorous advocacy and in-person, all-day mediation facilitated by a retired federal judge, Plaintiff Matt B. Allison ("Plaintiff"), individually and on behalf of all others similarly situated, and Republic Mortgage Insurance Company, ("Defendant"), entered into a Class Action Settlement (the "Settlement") to resolve their claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1000 *et seq.* ("ERISA"). Defendant agreed to pay $650,000.00 in cash to resolve Plaintiff's claims. This amount represents 50% of the potential monetary recovery. It is an excellent result under the circumstances. submits this Memorandum in support of his Unopposed Motion for an Order Granting Preliminary Approval of Class Action Settlement, Certifying the Proposed Settlement Class, Appointing Class Counsel, Approving the Form and Manner of Class Notion, Appointing Settlement Administrator and scheduling a final fairness hearing and hearing on Plaintiff's Case Contribution Awars and Attorneys' Fees and Expenses.

The Settlement Agreement, with exhibits, is submitted separately herewith. As required by Prohibited Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), an independent fiduciary will review the terms of the proposed Settlement and determine whether to authorize the proposed Settlement on behalf of the Plan, including the release of the Defendant and the Plan fiduciaries from the Released Claims, as that term is defined in the Settlement Agreement. This extra layer of

protection, unique to ERISA cases like this one, will assist the Court in deciding whether to grant final approval of the Settlement.

## I. <u>BACKGROUND</u>

### A. <u>Description of the Action</u>

On November 15, 2024, Plaintiff, a participant in the Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan (the "Plan") commenced this action by filing a class action complaint in this Court. (ECF No. 1.) Defendant is fiduciary of the Plan and had responsibility for selecting and prudently monitoring the Plan's investments. (*Id.*, ¶ 1). Plaintiff alleges Defendant failed to prudently monitor the Plan's investment in an insurance company's guaranteed interest account ("GIA"), certified false and misleading statements concerning the risk of loss to Plan participants invested in the GIA and failed to take action to avoid a $1.3 million loss of principal in the GIA. Plaintiff brought this action pursuant to 29 U.S.C. §§ 1109 & 1132(a)(2)-(3) to recover losses to the Plan and obtain other appropriate relief. (*Id.*).

### B. <u>Procedural Background</u>

On January 13, 2025, Defendant filed a motion to dismiss. (Dkt. 16). On February 3, 2025, Plaintiff filed an Amended Complaint. (Dkt. 18). On February 18, 2025, Defendant filed a second motion to dismiss. (Dkt. 19). On March 11, 2025, Plaintiff filed his response. (Dkt. 22). After the motion was fully briefed, on April 8, 2025, the Court denied the motion. (Dkt. 24). Thereafter, the parties participated

in a Rule 26(f) planning meeting and on May 19, 2025, submitted a report regarding the same. (ECF No. 27). On August 1, 2025, the parties jointly moved the Court to stay all litigation so the parties could try to resolve this matter with the assistance of Hon. Mark W. Bennett (Ret.). (Dkt. 32). The Court granted that joint motion and gave the parties until September 25, 2025, to mediate and to submit a notice informing the Court whether mediation was successful. (Dkt.33). On September 18, 2025, the parties participated in a full-day, in-person mediation Minneapolis, Minnesota, and ultimately were able to reach a settlement in principle. (*See* Declaration of Marc R. Edelman). On September 25, 2025, the parties notified the Court that they had reached settlement on a class-wide basis. (Dkt. 36).

## C.  <u>Discovery</u>

Before filing the lawsuit, Plaintiff's counsel conducted significant independent research providing a foundation for the claim and potential losses flowing therefrom. Following the filing of Defendant's Answer, both sides propounded written discovery including interrogatories, requests for production, and requests for admission. (*Edelman* Decl., ¶¶ 8, 11) Defendant provided Plaintiff with nearly 2,000 pages of relevant documents. (*Id.*)

## D.  <u>Settlement Negotiations</u>

The parties counsel first engaged in preliminary settlement negotiations but were unable to reach an agreement. (*Id.* ¶ 10) The parties agreed that a mediator

might help bridge the significant gap between them. (*Id.*) They also agreed that Judge Bennett (Ret.) was the best choice to serve as a mediator in this case because of his excellent track record mediating ERISA breach of fiduciary duty cases. (*Id.*) Before participating in the mediation, the parties prepared and exchanged detailed mediation statements, which included arguments and analyses of the strengths and weaknesses of their respective positions. (*Id.*) On September 18, 2025, the parties participated in a full-day in-person mediation, in Minneapolis, Minnesota. (*Id.* ¶ 11) After a full-day of negotiations, the parties were able to reach an agreement. The parties now seek the Court's preliminary approval of the Settlement.

### E. <u>The Settlement Agreement</u>

#### 1. **Settlement Amount**

The Settlement Agreement establishes a cash Settlement Amount of $650,000 as compensation for Class Members to be paid through the Plan. (Settlement Agreement, Sec. VII) The $650,000 monetary recovery represents 50% of the total potential monetary recovery. (*Edelman Decl.* ¶ 12.) The Settlement Amount will be allocated to Plan participants in proportion to their investment in the GIA and paid through their Plan account balances as discussed below.

The Settlement Amount will be used to cover all administrative costs associated with implementing the Settlement; attorney's fees and costs as approved by the Court; any Case Contribution Awards as approved by the Court; the

9

Independent Fiduciary's fees (capped at $20,000) and expenses (capped at $5,000); and the Claims Administrator's fees. (Settlement Agreement, ¶ 7.3), The Net Settlement Amount will be distributed through the Plan to Settlement Class members according to the proposed Plan of Allocation. (*Id.* ¶ 8.2) The Settlement Administrator will be responsible for calculating the amounts payable to Settlement Class members pursuant to the Plan of Allocation. (*Id.*, ¶¶ 8.2.2)

As set forth in the Plan of Allocation, Settlement Class members who have Plan accounts will have Settlement proceeds deposited directly into their respective Plan accounts. (*Id.* ¶¶ 8.4, 8.4.1, 8.4.2) For those Settlement Class members who no longer have accounts in the Plan, a Plan account will be created for them so that their distributions can be deposited directly into their account if they wish. (*Id.*, ¶¶ 8.5.1, 8.5.2) The payments will be made without the need of any claim forms or other requests for payment. (*Id.* ¶ 8.2) The Settlement Agreement does not provide for a "claims made" Settlement, or for any "reversion" of the Settlement Amount to Defendant or any of its affiliates. This ensure that all of the Net Settlement Amount gets allocated to Settlement Class members.

## 2. Retention of an Independent Fiduciary

Defendant shall select an Independent Fiduciary to review and consider the Settlement on behalf of the Plan and determine if the Settlement is reasonable and fair for the Plan. (*Id.* ¶ 2.1.) The Independent Fiduciary shall notify the parties of its

determination, no later than 10 calendar days after Class Counsel file their application for attorney's fees and costs. (*Id.* ¶ 2.1.2.) The Independent Fiduciary will also opine on the fairness of Class Counsel's application for fees and costs. (*Id.*) A copy of the Independent Fiduciary's determination report shall be provided to the parties' counsel and will be filed with the Court prior to final approval. (*Id.* ¶ 2.1.7.) The Independent Fiduciary's report will aid this Court in deciding whether to grant final approval of the Settlement. This is a unique benefit Courts have when considering final approval of ERISA plan-wide settlements. (*See* "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

### 3. Attorneys' Fees, Costs and Case Contribution Awards for Plaintiff

If approved by this Court and awarded at the final approval stage, Class Counsel's fees and costs, as well as Plaintiff' Case Contribution Awards, will be paid from the Settlement Amount. (*Id.* ¶ 10.1.) Class Counsel will petition the Court for an award of attorney's fees and costs not to exceed one-third (1/3) of the Gross Settlement Amount, (*Id.*). It is fair for Class Counsel to provide notice to Class Members at the preliminary approval stage of the amount of fees that Class Counsel will eventually request. This way Class Members can object before the final approval hearing, if they see fit. But the Court does not rule at the preliminary stage on any request for fees, costs, or case contribution awards. Plaintiff notes now that

a one-third fee is commonly awarded in ERISA class actions such as this. *See Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (in "ERISA excessive fee cases…courts have consistently recognized that a one-third fee is the market rate").

Class Counsel also will petition the Court for a Case Contribution Award not to exceed $10,000.00 for Plaintiff in recognition of his initiative in seeking qualified Counsel to prosecute this case and his service to the Class. All requests, including those for Class Counsel's fees and costs, are subject to Court approval. (*Id.* ¶ 10.3) The request is in line with service awards approved by courts in this Circuit in similar cases, which recognize the valuable contributions class representatives make to actions such as this that benefit an entire Plan, as well as current and former Plan participants. *See Kelly*, 2020 WL 434473, at *7–8 (approving $20,000 service awards to each of eight class representatives in similar ERISA class action).

### 4. Release of Claims

The Class Representative, the Plan, and Class Members agree to release any and all claims against Defendant for breach of ERISA's fiduciary duties, including all claims asserted or claims that could have been asserted in this action. (*Id.* ¶¶ 3.1, 3.2, 3.3, 3.4) The scope of the release is typical in ERISA settlements like this one.

### 5. Notice and Objections

The Settlement Agreement provides for notice to Settlement Class members

consistent with due process and proves an opportunity for Settlement Class members to object to final approval of the Settlement. (*Id.* ¶ 2.2.3, Ex. A) The notice plan provides Settlement Class members with information sufficient to make an informed decision about whether to object to the Settlement or to support it. This information is critical for the Court in connection with the final approval process. The Settlement Notice procedure includes mailing via First Class U.S. Mail of the Settlement Notice, to the last known address of each Settlement Class member. Mailing will be highly effective because most of the Settlement Class members are Plan participants who receive regular account statements via U.S. First Class Mail. The Notice will inform Settlement Class members of the nature of the action, the litigation background, the terms of the Settlement Agreement, the relief provided, the intent of Class Counsel to seek fees and costs, the proposed Case Contribution Awards payable to Plaintiff, and the scope of the release and binding nature of the Settlement. It also describes the procedure for objecting to the Settlement and states the date, time and place of the final fairness hearing. (*See generally* Exhibit A to the Settlement Agreement). The Settlement Agreement also provides that the Settlement Administrator shall establish a Settlement Website that will include, among other documents, the Notice, the Settlement Agreement and its exhibits. (*Id.* at ¶ ¶ 1.44, 2.2.3).

## II.    ARGUMENT

### A.    The Settlement Class Meets All Requirements of 23(a) and (b)(1) and Should Be Certified

Plaintiff seeks class certification of the Settlement Class, defined as follows: all participants in the Plan whose account balances were reduced by the market value adjustment to the assets invested in the guaranteed interest account investment option in or around January 2024, and their Beneficiaries of record and Alternate Payees, to the extent applicable, excluding the fiduciaries of the Plan (and their Beneficiaries and Alternate Payees).

### 1.    Rule 23(a) Requirements Are Satisfied Here

Plaintiff must establish that the Class meets each of the requirements of Rule 23(a). These four elements are referred to in the shorthand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Here, all four elements are satisfied.

#### a.    *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. "Classes of as few as 25 to 30 have been found to raise the presumption that joinder would be impracticable" *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 300 (D. Md. 2022) (internal citation and quotations omitted); *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (noting district court's finding "that some 480 potential class members

14

would easily satisfy the numerosity requirement"). Here, there were approximately 100 plan participants invested in the guaranteed interest account investment option in January 2024 when the market value adjustment occurred. Thus, the joinder of all Class members is impracticable and numerosity is satisfied.

### b. *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. 338. A single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See Yates v. NewRez LLC*, No. CV TDC-21-3044, 2023 WL 5108803, at *6 (D. Md. Aug. 9, 2023) ("the commonality requirement can be met when there is even a single common question of law or fact shared by the named plaintiff and the putative class."). In this case, the commonality requirement is readily satisfied because there are numerous common questions of law and fact, including whether Defendant was a fiduciary with respect to the Plan, whether Defendant prudently monitored the Plan's GIA investment and considered actions to avoid large losses to Plan participants, the proper form of equitable relief, and the proper measure of monetary relief. These common issues unify all Settlement Class members. *Trauernicht v. Genworth Fin., Inc.*, 2024 WL 3835067, at *8 (E.D. Va. Aug. 15, 2024); *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) ("In general, the question of defendants' liability for ERISA violations is

15

common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." (quotation omitted)); *Stegemann v. Gannett Co., Inc.*, 2022 WL 17067496, at *10 (E.D. Va. Nov. 17, 2022) (finding numerous questions of law and fact common to the Proposed Class, including principally whether Defendants violated their fiduciary duties under ERISA by failing to remove the TEGNA Stock Fund at an earlier time"); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) (same). Thus, the commonality requirement is readily satisfied.

### c. *Typicality*

A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *See Boyd,* 299 F.R.D. at 458 ("The typicality requirement focuses on 'whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'") "'Given the representative nature of a suit filed pursuant to ERISA § 502(a)(2),' the class representatives' claims are inherently typical of those of the rest of the class." *Id.* (quoting *DiFelice*, 235 F.R.D. 70, 79 (E.D. Va. 2006); *see also Knight v. Lavine*, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013) ("The representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class.").Here, Plaintiff has the same claims for breach of

fiduciary duties under ERISA as the other Class members. Plaintiff: (1) seeks relief for the same Plan losses, (2) caused by the same alleged breach of fiduciary duties, (3) affecting the same Plan investment. For these reasons, courts routinely find any participant's ERISA fiduciary breach claim to be typical of the claims of all participants in the plan. *See Trauernicht*, 2024 WL 3835067, at *9; *Stegemann*, 2022 WL 17067496, at *10; *Tatum*, 254 F.R.D. at 64–66. Thus, the typicality requirement is satisfied.

### d.     *Adequacy*

To evaluate adequacy, courts consider whether (1) the named Plaintiff's interests are opposed to those of other class members, and (2) whether the Plaintiff's attorneys are qualified, experienced, and capable. *Boyd*, 299 F.R.D. at 459. First, Plaintiff has no interests adverse or antagonistic to the Plan or other Class members. Plaintiff is a former participant in the Plan and allegedly suffered a *pro rata* loss as a result of Defendant's alleged fiduciary breaches with regard to the administration of the Plan. As such, Plaintiff' interests are perfectly aligned with the interests of other Class members, thereby meeting the first adequacy prong. *Trauernicht*, 2024 WL 3835067, at *11 (finding adequate Plaintiffs who "have demonstrated a willingness to assist in the case by providing information to counsel, reviewing pleadings, providing documents, and continuing to communicate with counsel.").

Second, as discussed below, Plaintiff has retained counsel with significant experience in federal class actions, and in particular, ERISA breach of fiduciary duty cases like this one. Plaintiff's counsel have investigated the claims and defenses in this case since 2022, they have a documented history of success litigating similar ERISA claims, they have reviewed tens of thousands of pages of documents specific to this case, worked with industry experts to advance and protect the claims here, defeated Defendant's motion to dismiss, and shepherded this case to a proposed Settlement. *See generally* Edelman Decl., Declaration of Jennifer K. Lee. Thus, adequacy is easily satisfied.

## 2. The Settlement Class Should Be Certified Under Rule 23(b)(1)

Fed. R. Civ. P. 23(b)(1)(B) provides that a class may be certified where "prosecuting separate actions by … individual class members would create a risk of … adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." (*Id.*).

ERISA §409, 29 U.S.C. §1009 provides, "(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally <u>liable to make good to such plan any losses to the plan resulting from each such breach</u> …." (*Id.* Emphasis added.) Plaintiff seeks no recovery of any individualized losses because ERISA does not provide the ability

18

for individuals to recover individual remedies for breach of ERISA's fiduciary duties (with limited exceptions not applicable here).

As the Supreme Court has explained, "Classic examples" of suits appropriate for class resolution under Rule 23(b)(1)(B) classes include "actions charging a breach of trust by a … fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Because of the derivative nature of breach of fiduciary claims, courts routinely certify class actions such as this as a "paradigmatic type of Rule 23(b)(1) action." *Trauernicht v. Genworth Fin., Inc.*, 2024 WL 3835067, at *13 (E.D. Va. Aug. 15, 2024); *see also Longo v. Trojan Horse Ltd.*, 208 F.Supp.3d 700, 712 (E.D.N.C. 2016) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)); *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008) (collecting cases); *Stegemann v. Gannett Co.*, No. 118CV325AJTJFA, 2022 WL 17067496, at *11 (E.D. Va. Nov. 17, 2022) ("Several courts, including this one, have held that ERISA fiduciary breach claims are appropriate for Rule 23(b)(1) certification."); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006) ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1)… Indeed, given the derivative nature of suits

19

brought pursuant to § 502(a)(2) on behalf of the Plan, 'ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.').

As the above-cited cases show, the instant ERISA class action is precisely the type of case that Rule 23(b)(1) envisioned. Plaintiff alleges that the Defendant breached its fiduciary duties to the Plan and that the breach similarly affected all Plan participants and beneficiaries. The proposed Class therefore satisfies Rule 23(B)(1)(B).

### B.    The Settlement Agreement Should Be Preliminarily Approved

"The voluntary resolution of litigation through settlement is strongly favored by the courts." *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990). "This policy is particularly appropriate in class actions, where "there is an overriding public interest in favor of settlement" settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Id.* Here, the proposed Settlement is well within the range of reasonableness, comports with Rule 23, due process considerations, and thus should be preliminarily approved by the Court.

### 1.    Standards and Procedures for Preliminary Approval

At the preliminary approval stage, the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms"

and "direct[s] the preparation of notice [to class members] of the certification, proposed settlement, and date of the final fairness hearing." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *see also* Manual for Complex Litigation (Fourth), §21.632 (2004)). This is an important stage because it gives class members an opportunity to object or support the proposed settlement. There are two primary prongs to the preliminary assessment of a class action settlement: fairness and adequacy. *Id.*

### 2. The Settlement Satisfies the Fairness Prong

The court considers the following factors in assessing the procedural fairness of the proposed settlement:

> [1] whether the proposed settlement is the product of good faith bargaining at arm's length; [2] the posture of the case at settlement; [3] the extent and sufficiency of discovery conducted; [4] counsel's experience with similar litigation and their relevant qualifications; and [5] any pertinent circumstances surrounding the negotiations.

*Id.* These factors support preliminary approval here.

### a. *Negotiations Occurred at Arm's Length*

The Settlement was the result of extensive arm's length negotiations, conducted before a mediator and by experienced counsel for all the parties, following specific claims-related discovery and contentious litigation. The parties' negotiations included a full day in-person mediation facilitated by a retired federal court judge. A presumption of fairness exists where parties negotiate at arm's length

21

with the assistance of a mediator. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 830 (E.D.N.C. 1994); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *5 (D. Md. July 15, 2019) ("reliance on a neutral mediator experienced in complex litigation [or a court-affiliated mediator], indicate the Settlement is fair and that it should be approved").

The Class Members were represented by attorneys who have considerable experience and success in prosecuting and settling class actions, have been vigorously prosecuting this and other cases for similar claims for many years, and therefore, were well versed in the issues and how to evaluate the claims. (*Edelman Decl.*, ¶¶ 5,6; *Lee Decl.*, ¶¶ 4, 5, Ex. 1.) Defendant was similarly represented by able counsel experienced in ERISA class action litigation. Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See*, *e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *All. To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.").

22

Here, Class Counsel – law firms that are nationwide leaders in class action litigation, including ERISA litigation – have made a considered judgment based on adequate information derived from meaningful discovery that the Settlement is not only fair and reasonable, but a favorable result for the Class. (*Edelman Decl*. ¶ 12.) Class Counsel's beliefs are based on their deep familiarity with the factual and legal issues in this case and the risks associated with continued litigation. (*Id.*) This further weighs in favor of the fairness of the settlement. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2010) (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval").

### b.    There Has Been Sufficient Discovery

Class Counsel obtained sufficient discovery to enter into the proposed Settlement on a fully informed basis. (*Edelman Decl.* ¶¶ 8, 11.) Following the Court's denial of Defendant's motion to dismiss, the parties engaged in discovery, with Defendant producing almost 2,000 pages of documents. Only then did the parties entered into settlement discussions.. (*Id.*)

Based on this work, Class Counsel gained an understanding of both the strengths and weaknesses of the claims in this case. (*Id.,* ¶ 11.) In particular, liability in this case is contested, and both sides would face considerable risks were the

23

litigation to proceed. (*Id. Id.,* ¶ 12.) In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial, recovery for the Class. (*Id.*)

Plaintiff faced a risk that they would be unable to establish the Defendant's liability, and, if able to do so, they faced the further risk that a trier of fact would find no loss or losses that were less than the $650,000.00 achieved by means of the Settlement. Plaintiff and his counsel believe the Settlement represents a favorable outcome for the Settlement Class. The Settlement will avoid the cost and expense of continued litigation and will achieve immediate relief for the Settlement Class.

While it is important to remember that "settlement is a compromise," the proposed Settlement is reasonable and confers a substantial benefit on the Settlement Class, particularly given the inherent risks of continued litigation. As described above, each Class member will receive a portion of the Settlement Amount. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly militates in favor of settlement approval).

### c. *Class Counsel Are Experienced in Similar Litigation*

Class Counsel are highly experienced and skilled in handling complex class actions and, in particular, ERISA class actions. Class Counsel have served in leadership positions in numerous ERISA class actions and have successfully

obtained meaningful recoveries for retirement plan participants through class litigation. (*Edelman Decl.*, ¶¶ 5,6; *Lee Decl.*, ¶¶) Accordingly, this factor strongly supports granting preliminary approval.

### 3.     The Settlement Satisfies the Adequacy Prong

The Court considers the following factors in assessing the substantive adequacy of the proposed Settlement:

> [1] the relative strength [and weaknesses] of the Plaintiff' case on the merits…; [2] the cost of additional litigation; [3] defendants' ability to pay a judgment; and [4] any opposition to the settlement

*In re American Capital Shareholder Derivative Litigation*, 2013 WL 3322294, at *3. These factors support preliminary approval.

#### a.     *The Strength and Weaknesses of Plaintiff' Case Support Approval*

This case presented a novel claim under ERISA concerning the monitoring of the GIA as the Plan's capital preservation option in light of RMIC's financial struggles. Plaintiff's counsel is unaware of any court order regarding the prudent monitoring of a plan's capital preservation option under similar circumstances. Thus, Plaintiff faced great uncertainty as to the success of this claim, even at the pleading stage. Indeed, the parties hotly contested the plausibility that Defendant could have anticipated the termination of the Plan and the downturn in the bond market that caused the negative Market Value Adjustment. *See* Dkt. 17 at 11–13. Even if Plaintiff could prove liability, there was the risk that depending on when the Court were to find that Defendant should have prudently

removed the GIA, Plaintiff's losses would be wiped out due to gains in the GIA experienced after that time.

While Plaintiffs were confident in their ability to overcome these defenses, it would have required significant investment in experts. These risks weigh in favor of approval of the settlement. *See Esslinger*, 2012 WL 5866074, at *9 (finding this factor satisfied where defendants asserted "it would vigorously challenge Plaintiffs' ability to show a causal nexus between [] alleged wrongdoing and losses sustained by Class members."); *Lenahan*, 2006 WL 2085282, at *15 ("In addition to defenses to liability, Plaintiffs would have to overcome any defenses regarding damages that Defendants would assert."). Indeed, the risk of little to no recovery is ever present in complex litigation, including in ERISA class actions. *See, e.g.*, *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 WL 10886802, at *24–25 (N.D. Ga. Mar. 28, 2019) (granting summary judgment in defendants' favor on ERISA claim involving claims of breach of the duty of prudence); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134-35 (D. Colo. 2020) (judgment awarding only a fraction of the damages sought in ERISA class action after bench trial); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 108-09 (D. Mass. 2010) (ERISA claim value reduced 5x by adverse pre-trial orders). Given the risks Plaintiffs faced with a novel legal claim, this factor favors preliminary approval.

### b. *The Cost of Additional Litigation Supports Preliminary Approval*

ERISA class actions are "notoriously complex cases," often requiring multiple experts for liability and damages, multiple motions for summary judgment,

and "often leading to lengthy litigation." *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021) (first quotation); *Krueger v. Ameriprise Fin., Inc.*, No. 11–CV–02781 (SRN/JSM), 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (second quotation). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals. *See e.g.*, *Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (affirming judgment following bench trial held in 2012 for a case filed in 2009); *Fuller v. SunTrust Banks, Inc.*, No. 1:11-cv-00784, Dkt. 295-1 at 10–11 (N.D. Ga. June 5, 2020) (recounting lengthy procedural history of ERISA class action, including "denial of the administrative claim, the appeal of that claim, dismissal of two of the constituent cases, and one unsuccessful appeal to the Eleventh Circuit."); *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting 11-year procedural history and remanding to district court a second time); *Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007). The Settlement avoids lengthy and costly litigation and provides immediate relief to the Settlement Class and therefore counsels in favor of preliminary approval.

### *Other Factors*

Other factors noted by courts are not material in this case and/or at this stage. Defendant is a large corporation and able to pay any judgment. Class Notice has not

yet been issued, so it is not known whether there will be objections to the proposed Settlement.

**C.** **The Court Should Appoint Plaintiff' Counsel as Class Counsel**

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court should consider:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). Proposed Class Counsel, Engstrom Lee LLC, and Morgan & Morgan, P.A., satisfy these criteria. These firms' lawyers expended a great deal of time, effort and expense investigating the Defendant's documents, practices, and actions prior to and since filing this action. Further, Class Counsel are highly experienced in ERISA and other complex class action litigation. Class Counsel's track records of success (including in this case) demonstrate that they are experienced and knowledgeable concerning ERISA law and class action practice. (*Id.*) Accordingly, the appointment of Class Counsel under Rule 23(g) is warranted.

28

### D. The Proposed Class Notice Program Should Be Approved

Under the Settlement Agreement, the Settlement Administrator will send individualized Class Notices via First-Class U.S. Mail to Class members. The Settlement Administrator will also establish a website related to the Settlement in this case and the Notice shall be featured on it. This procedure is designed to reach as many Class members as reasonably practicable. The Settlement Notice informs the Settlement Class of the nature of the action, the definition of the Class, a detailed summary of the terms of the Settlement (including the relief provided and the scope of the release), a summary of the proposed Plan of Allocation, the binding nature of the Settlement, and the intent of Class Counsel to seek an award of attorney's fees and reimbursement for their litigation expenses. It also informs Settlement Class members how and when to file objections to the Settlement. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("Individual notice must be provided to those class members who are identifiable through reasonable effort.") The proposed Class Notice should be approved for dissemination to Class members.

### E. A Final Fairness Hearing Should Be Scheduled

The Court ought to schedule a final fairness hearing, as contemplated by Rule 23, to determine that final approval of the Settlement is warranted and proper. *See*

Fed. R. Civ. P. 23. Such hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy, and reasonableness of the Settlement Agreement. Additionally, Class Counsel will present their application for their fees and reasonable expenses pursuant to Rule 23(h), as well as request case contribution awards for the Plaintiff. To ensure ample time for Class Notice to be mailed, considered by Class members, for the Independent Fiduciary to conduct its investigation and issue its written report, and for all of the due process requirements to be satisfied, Plaintiff request the Court to schedule a final fairness hearing after the plan participants have had sufficient time to receive and review Class Notice forms.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Unopposed Motion and enter the proposed Preliminary Approval Order.

Respectfully submitted,

*/s/ Jean S. Martin*
Jean S. Martin, Esq.
NC Bar No.: 25703
Marc R. Edelman, Esq.
Florida Bar No.: 0096342*
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813-577-4722
Fax: 813-257-0572
jeanmartin@forthepeople.com

30

Meledman@forthepeople.com

*Via special Appearance*

/s/Jennifer K. Lee
Jennifer K. Lee, Esq.
MN Bar No.: 399012*
Charlie C. Gokey, Esq.
MN Bar No.: 040225*
**ENGSTROM LEE, LLC**
323 N. Washington Avenue, Suite 200
Minneapolis, MN 55401
Tel: 612-305-8349
Fax: 612-677-3050
jlee@engstromlee.com
cgokey@engstromlee.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 2, 2025, a true and correct copy of the foregoing was electronically filed via the CM/ECF system which will automatically send a notice of filing to all counsel of record.

/s/ Jean S. Martin
Jean S. Martin

31