# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| MATT ALLISON, as representative of a class of similarly situated persons, and on behalf of the Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan,<br>Plaintiff,<br>v.<br>REPUBLIC MORTGAGE INSURANCE COMPANY,<br>Defendant. | Case No. 1:24-cv-00950-CCE-LPA |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Plaintiff Matt B. Allison ("Plaintiff"), individually and on behalf of all others similarly situated, and Republic Mortgage Insurance Company ("Defendant"), entered into a Class Action Settlement (the "Settlement") to resolve their claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1000 *et seq.* ("ERISA"). Defendant agreed to pay $650,000.00 in cash to resolve Plaintiff's claims, which amounts to 50% of the potential monetary recovery. It is an excellent result under the circumstances. On December 5, 2025, the Court preliminarily approved the Settlement (ECF No. 41), and the parties now seek the Court's final approval. The Settlement is fair, reasonable, adequate, and warrants final approval. Plaintiff respectfully requests that the Court enter the Final Approval Order attached as Exhibit A.

1

## II.    BACKGROUND

### A.    Description of the Action

On November 15, 2024, Plaintiff, a participant in the Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan (the "Plan") commenced this action by filing a class action complaint in this Court. (ECF No. 1). Defendant is fiduciary of the Plan and had responsibility for selecting and prudently monitoring the Plan's investments. (*Id.*, ¶ 1). Plaintiff alleges Defendant failed to prudently monitor the Plan's investment in an insurance company's guaranteed interest account ("GIA"), certified false and misleading statements concerning the risk of loss to Plan participants invested in the GIA and failed to take action to avoid a $1.3 million loss of principal in the GIA. Plaintiff brought this action pursuant to 29 U.S.C. §§ 1109 & 1132(a)(2)-(3) to recover losses to the Plan and obtain other appropriate relief. (*Id.*).

### B.    The Settlement Agreement

The Settlement Agreement establishes a cash Settlement Amount of $650,000 as compensation for Class Members to be paid through the Plan.[1] (ECF No. 39-3, *Settlement Agreement*, Sec. VII). The $650,000 monetary recovery represents 50% of the total potential monetary recovery. (ECF No. 39-2, *Edelman Decl.* ¶ 12.). The

---

[1]    The Plan was merged into a 401(k) plan sponsored by Old Republic International Corporation.

Settlement Amount will be allocated to Plan participants in proportion to their investment in the GIA and paid through their Plan account balances as discussed below.

The Settlement Amount will be used to cover all administrative costs associated with implementing the Settlement; attorney's fees and costs as approved by the Court; any Case Contribution Awards as approved by the Court; the Independent Fiduciary's fees (capped at $20,000) and expenses (capped at $5,000); and the Claims Administrator's fees. (*Settlement Agreement*, ¶ 7.3). The Net Settlement Amount will be distributed through the Plan to Settlement Class Members according to the proposed Plan of Allocation. (*Id.* ¶ 8.2). The Settlement Administrator will be responsible for calculating the amounts payable to Settlement Class Members pursuant to the Plan of Allocation. (*Id.*, ¶ 8.2.2).

As set forth in the Plan of Allocation, Settlement Class Members who have Plan accounts will have Settlement proceeds deposited directly into their respective Plan accounts. (*Id.* ¶¶ 8.4, 8.4.1, 8.4.2). For those Settlement Class Members who no longer have accounts in the Plan, a Plan account will be created for them so that their distributions can be deposited directly into their account if they wish. (*Id.*, ¶¶ 8.5.1, 8.5.2). The payments will be made without the need for any claim forms or other requests for payment. (*Id.* ¶ 8.2). The Settlement Agreement does not provide for a "claims made" Settlement, or for any "reversion" of the Settlement Amount to

Defendant or any of its affiliates. This ensures that the entire Net Settlement Amount gets allocated to Settlement Class Members.

### 1. Retention of an Independent Fiduciary

Fiduciary Counselors was retained as the independent fiduciary for the Plan and has completed its review of the Settlement. (Exhibit B – *Report of Independent Fiduciary for the Settlement in Matt B. Allison v. Republic Mortgage Insurance Company*). As required by PTE 2003-39, Fiduciary Counselors has opined that the Settlement terms are "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone." (*Id*., P. 9). The "terms and conditions of the transaction are no less favorable to the Plan than comparable arm's length terms and conditions that would have been agreed to by unrelated parties under similar circumstances." (*Id*., P. 10). Fiduciary Counselors also found the $650,000 Settlement Amount to be "a fair and reasonable recovery given the potential recovery," and "the other terms of Settlement to be reasonable, including the scope of the release, attorneys' expenses, the requested case contribution award to the Class Representative and the Plan of Allocation." (*Id.*). Fiduciary Counselors found the requested amount for attorney's fees to be "reasonable." (*Id.*, P. 8).

### 2. Attorneys' Fees, Costs, and Case Contribution Awards

If approved by this Court, Class Counsel's fees and costs, as well as Plaintiff's Case Contribution Award, will be paid from the Settlement Amount. The Settlement is not contingent on any such fees, costs, or compensation being awarded. Class Counsel has already filed a fee petition with this Court seeking attorney's fees not to exceed one-third (1/3) of the Gross Settlement Amount. (ECF No. 47). While the Court will make the final determination regarding Class Counsel's attorney's fees, Fiduciary Counselors has opined the requested fees to be "reasonable."

The notice to Class Members disclosed the amount of fees that Class Counsel is seeking. Class Members have an opportunity to object to Class Counsel's requested fees and costs before the final approval hearing. No objections have been filed thus far. Although the rationale for Plaintiff's fee request is set forth in full in its fee petition, a one-third fee award of the gross settlement fund is commonly awarded in ERISA class actions such as this. *See Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (in "ERISA excessive fee cases…courts have consistently recognized that a one-third fee is the market rate").

In its fee petition, Class Counsel also petitions the Court for a Case Contribution Award not to exceed $10,000.00. The request is in line with service awards approved by courts in this Circuit in similar cases, which recognize the valuable contributions class representatives make to actions such as this that benefit

an entire Plan, as well as current and former Plan participants. *See Kelly*, 2020 WL 434473, at *7–8 (approving $20,000 service awards to each of eight class representatives in similar ERISA class action). While the Court will make the final determination regarding Plaintiff's Case Contribution Award, Fiduciary Counselors has opined the requested award to be "reasonable."

### 3. Release of Claims

The Class Representative, the Plan, and Class Members agree to release any and all claims against Defendant for breach of ERISA's fiduciary duties, including all claims asserted or claims that could have been asserted in this action. (*Settlement Agreement*, ¶¶ 3.1, 3.2, 3.3, 3.4). The scope of the release is typical in ERISA settlements like this one.

### 4. CAFA Compliance

On January 9, 2026, CAFA notice was mailed to the relevant state and federal officials. (Exhibit C – *Bridley Decl.*, ¶ 4). To date, none of the governmental agencies have objected to the Settlement.

### 5. The Court-Approved Notice Plan was Effectively Administered

The Notice informed Settlement Class Members of the nature of the action, the litigation background, the terms of the Settlement Agreement, the relief provided, the intent of Class Counsel to seek fees and costs, the proposed Case Contribution Awards payable to Plaintiff, and the scope of the release and binding nature of the

6

Settlement. It also described the procedure for objecting to the Settlement and stated the date, time and place of the final fairness hearing. The proposed form and method of notice of the proposed Settlement satisfy all due process considerations.

On January 5, 2026, Atticus Administration, LLC ("Settlement Administrator") mailed the Court-approved Class Notice to the 100 members of the Settlement Class. (*Id.*, ¶ 8). Five notices were returned, of which three were successfully remailed. Only two of the 100 Class Members did not receive Class Notice – a success rate of 98%. (*Id.*, ¶ 9.) The Settlement Website and Toll Free Number were both activated the same day. (*Id.*, ¶¶ 9, 10). There have been no objections to the Settlement. (*Id.*, ¶ 11).

### III. <u>ARGUMENT</u>

#### A. **Legal Standard**

When assessing at final approval whether a proposed settlement is fair, reasonable, and adequate, courts in the Fourth Circuit evaluate four factors for determining a settlement's fairness: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation. *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)).

There is a strong presumption that a settlement is fair and reasonable when it is the result of arm's-length negotiations. *Jiffy Lube,* 927 F.2d at 158-59.

The Court should assess the adequacy of the settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Id*.

An analysis of these factors weighs heavily in favor of the Court granting final approval of the Settlement.

**B.      The Posture of the Case at the Time Settlement was Proposed and the Extent of Discovery Conducted**

Considering the posture of the case at the time of settlement allows the Court to determine whether the case has progressed far enough to dispel any wariness of "possible collusion among the settling parties." *In re The Mills Corp. Sec. Litig*., 265 F.R.D. 246, 254 (E.D. Va. 2009) (quoting *Jiffy Lube*, 927 F.2d at 159). In this case, as in *In re MicroStrategy, Inc. Securities Litigation*, "the Settling Parties vigorously contested [ ] motion[s] to dismiss," 148 F.Supp.2d 654, 664 (E.D. Va. 2001), and engaged in formal settlement mediation with the assistance of a professional mediator. "These adversarial encounters dispel any apprehension of collusion

between the parties." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (finding, under similar circumstances including the assistance of a professional mediator, that the first factor weighed in favor of the fairness of the proposed settlement).

Class Counsel obtained sufficient discovery and documents from Plaintiff and Defendant to enter into the proposed Settlement on a fully informed basis. (ECF No. 39-1, *Lee Decl.*, ¶ 23; *Edelman Decl.*, ¶¶ 8, 11). Following the Court's denial of Defendant's motion to dismiss and <u>after</u> exchanging written discovery, the parties entered into settlement discussions, and Plaintiff requested and obtained significant information from Defendant, which Plaintiff carefully reviewed. Based on this work, Class Counsel gained an understanding of both the strengths and weaknesses of the claims in this case. (*Id.*) Thus, "although this settlement came . . . prior to the completion of formal discovery–it is clear that plaintiffs have conducted sufficient informal discovery and investigation to . . . evaluate [fairly] the merits of Defendants' positions during settlement negotiations." *In re MicroStrategy*, 148 F.Supp.2d at 664.

### C. The Circumstances Surrounding Settlement Negotiations and Counsel's Experience

The Settlement was the result of extensive arm's length negotiations, an in-person mediation conducted before an experienced ERISA class action mediator, the Hon. Mark W. Bennett (Ret.), and by experienced counsel for all the parties,

following specific claims-related discovery. (*Edelman Decl*., ¶ 12). A presumption of fairness exists where parties negotiate at arm's length with the assistance of a mediator. *Jones v. Coca-Cola Consol., Inc*., No. 3:20-cv-00654, 2022 WL 3051236, at *2 (W.D.N.C. Aug. 2, 2022) (granting final approval of ERISA class action settlement and finding the settlement "fair, reasonable, and adequate" in part because "[t]he [s]ettlement was negotiated vigorously and at arm's length, under the auspices of the [m]ediator."); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. 16-cv-3025, 2019 WL 3183651, at *5 (D. Md. July 15, 2019) ("reliance on a neutral mediator experienced in complex litigation . . . indicate[s] the Settlement is fair and that it should be approved"). The parties submitted comprehensive mediation briefs to Judge Bennett several days prior to the mediation carefully laying out and analyzing all relevant issues in the case. The parties' negotiations were sufficiently informed, thorough, and at arm's length to ensure that the parties fairly arrived at the proposed Settlement. *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 572 (E.D. Va. 2016).

The Class is represented by attorneys who have considerable experience and success in prosecuting and settling class actions, have been vigorously prosecuting this and other cases for similar claims for many years, and therefore, were well versed in the issues and how to evaluate the claims. (*Lee Decl.*, ¶¶ 1-5; *Edelman Decl.*, ¶ 6). Defendant was similarly represented by able counsel experienced in

10

ERISA class action litigation. *See* Holland & Knight ERISA Litigation, *available at* https://tinyurl.com/4cv53asz. Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See*, *e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

Here, Class Counsel – law firms that are nationwide leaders in class action litigation, including ERISA litigation – have made a considered judgment based on adequate information derived from meaningful discovery that the Settlement is not only fair and reasonable, but a favorable result for the Class. Class Counsel's beliefs are based on their deep familiarity with the factual and legal issues in this case and the risks associated with continued litigation. (*Edelman Decl.*, ¶¶ 8-11). This further weighs in favor of the fairness of the settlement. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2010) (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval").

**D.      The Settlement Adequately Reflects the Relative Strength of Plaintiff's Case and the Challenges of Proof Plaintiff May Encounter at Trial**

The Settlement represents an outstanding recovery in light of both the strength of Plaintiff's claims and the defenses raised by Defendant. *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. VA. 2009) (examining "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case").

The issue in this action—whether Defendant, which faces financial challenges, should have removed a guaranteed investment account from the Plan's investment menu—is novel, and liability in this case is contested. Both sides would face considerable risks were litigation to proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial, recovery for the Class. Although Plaintiff is confident in his case, the summary judgment stage and a potential trial involve real uncertainties for both sides. While a trial on the merits in any case always entails some risk, in the context of ERISA breach of fiduciary duty class actions, the risk is sometimes even greater. *See, e.g., In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 496–97 (E.D. Mich. 2008) ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law."). This is because, "[e]ven if Plaintiffs established a fiduciary breach, it is 'difficult' to measure damages in cases alleging imprudent

12

or otherwise improper investments." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *5 (S.D. Ohio Feb. 18, 2021).[2]

Plaintiff faced uncertainty in proving Defendant's liability. Even if they succeeded in establishing liability at trial, they still risked the Court finding either minimal or lower Plan losses than the $650,000 secured through the Settlement. Given these risks, Plaintiff and his counsel believe the Settlement offers a favorable outcome for the Settlement Class. It avoids the costs and burdens of prolonged litigation while providing immediate relief to the Settlement Class.

While it is important to remember that settlement is a compromise, the proposed Settlement is reasonable and confers a substantial benefit on the Settlement

---

[2] On March 10, 2026, the Fourth Circuit issued its opinion in *Trauernicht v. Genworth Financial Inc.* reversing and vacating the district court's grant of class certification, holding that certification of a class under Fed. R. Civ. P. 23(b)(1) was inappropriate for the defined contribution plan at issue given that plaintiffs primarily brought "individualized monetary claims". -- F.4th --, 2026 WL 667917 (4th Cir. Mar. 10, 2026). The Plaintiffs-Appellees in *Trauernicht* have moved for reconsideration *en banc*. Plaintiff believes *Trauernicht* is distinguishable. Unlike *Trauernicht*, this case involves a single product, and the loss occurred at a single point in time, when the market value adjustment was applied. Thus, the existence of damages would not vary depending upon which investment a class member was in, or when they made their original investment. Further, (b)(1) certification remains appropriate given that the remedy is identical for all class members: pro rata distribution based on GIA account balance. *Johnson v. Meriter Health Servs. Emp. Ret. Plan,* 702 F.3d 364, 370 (7th Cir. 2012) (explaining that relief is "individualized" under *Dukes* where "awards [are] based on evidence specific to particular class members"). Should the Court disagree, the parties are in general agreement that certification of the settlement class under Fed. R. Civ. P. 23(b)(3) would also be appropriate, but would likely need to amend the settlement agreement and notice as a result.

Class, particularly given the inherent risks of continued litigation. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly militates in favor of settlement approval).

### E. Anticipated Duration and Expense of Additional Litigation

The completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial time and expense for all parties. *Brown*, 318 F.R.D. at 573. Conversely, if granted final approval, the proposed Settlement will provide significant relief quickly. This factor weighs in favor of the adequacy of the proposed Settlement. *Id.*; *see also In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:23-cv-3147-RMG, 2024 WL 1341122, at *10 (approving a settlement that avoided the costs of expert trial witnesses and noting that "any judgment for a Class Member would be subject to lengthy appeals while the Settlement Agreement provides immediate results and benefits to Settlement Class Members.")

### F. Solvency of the Defendant and the Likelihood of Recovery

Defendant's solvency or the ability of the Class to recover on a judgment rendered against Defendant is not contested. This factor is, thus, not applicable. *Henley v. FMC Corp.*, 207 F.Supp.2d 489, 494 (S.D.W. Va. 2002) ("[That factor] is

largely beside the point given the other factors weighing in favor of a negotiated resolution.")

### G.  There Currently is No Opposition to the Settlement

Not a single Class Member has filed an objection to any aspect of the Settlement. The fact that no one filed an objection weighs heavily in favor of granting final approval. *See, e.g., McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) (affirming district court's approval of a settlement where only 0.04% of the class objected); *Herrera v. Charlotte Sch. of Law, LLC*, 818 Fed. App'x. 165 (4th Cir. 2020) (affirming district court's approval of settlement where only 4% of the class objected); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118–19 (3d Cir.1990) (finding settlement strongly favored even when there were 29 objectors in a class of 281 members); *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 212 (E.D. Pa. 2011) (two objectors in a class of approximately 40,000 weighed in favor of approving class action settlement).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Unopposed Motion and enter the proposed Final Approval Order attached as Exhibit A.

Respectfully Submitted this 2nd day of April 2026.

Respectfully submitted,
*/s/ Marc R. Edelman*

Marc R. Edelman,
FL Bar No. 0096342*
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908
Facsimile: (813) 222-4795
medelman@forthepeople.com

Jennifer K. Lee, NY Bar No. 4876272*
**ENGSTROM LEE LLC**
323 N. Washington Avenue, Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
Facsimile: (612) 677-3050
jlee@engstromlee.com

Jean S. Martin, NC Bar No. 25703
**Aylstock, Witkin, Kreis & Overholtz, PLC**
17 E. Main Street Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Facsimile: (850) 916-7449
jmartin@awkolaw.com

*V*ia special appearance*

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I certify that on April 2, 2026, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice to all counsel of record.

*/s/ Marc R. Edelman*
Marc R. Edelman

16