IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MATT ALLISON, as representative of a class of similarly situated persons, and on behalf of the Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan,<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC MORTGAGE INSURANCE COMPANY,<br><br>Defendant. | ) | 1:24-CV-950 |

**MEMORANDUM OPINION, ORDER, and JUDGMENT**

Catherine C. Eagles, Senior District Judge.

Plaintiff and putative class representative, Matt Allison, sued defendant, Republic Mortgage Insurance Company, alleging violations of the Employee Retirement Income Security Act. The parties in the putative ERISA class action agreed to settle the case. The Court granted preliminary approval of the amended class settlement. Notice has been given to the class, and Mr. Allison has moved for final approval of the settlement terms under Federal Rule Civil Procedure 23.

A hearing on the motion for final approval was held on October 16, 2026. The Court has considered the record including the lack of objection by any potential class members, the single opt-out, the proposed settlement agreement, the supporting documents and evidence, and the statements of counsel at the final approval hearing and

in their declarations. The Court grants final certification of the class and approval of the class action settlement because the requirements of Rule 23 are met and settlement is in the best interests of the class members.

## I. Background

As an employee of Republic Mortgage, Mr. Allison participated in the Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan (the "Plan"). Doc. 18 at ¶¶ 1, 6. The Plan was a defined contribution retirement plan sponsored and administered by Republic Mortgage. *Id.* at ¶¶ 1, 7. The Plan allowed employees to defer wages pre-tax and invest in different investment options for retirement benefits. *Id.* at ¶ 7. As a participant-directed plan, it offered a variety of investment options with different risk and return characteristics. *Id.* at ¶¶ 9–11. In November 2023, contributions to the Plan were discontinued due to a pending sale of Republic Mortgage. *Id.* at ¶ 8. Around July 2024, all Plan accounts were transferred to the 401(k) plan sponsored by Republic Mortgage's former parent company (the "ORI Plan"). *Id.* at ¶¶ 6, 8.

The guaranteed interest account ("GIA") was the Plan's sole capital preservation investment option. *Id.* at ¶ 11. Mr. Allison invested all of his Plan account in the GIA, and around January 2024, his account suffered around a 9% loss. *Id.* at ¶ 6.

Mr. Allison alleged that Republic Mortgage failed to prudently monitor the Plan's investment in an insurance company's GIA, certified false and misleading statements concerning the risk of loss to Plan participants invested in the GIA, and failed to take action to avoid a $1.3 million loss of principal in the GIA. *Id.* at ¶¶ 1, 58–59. He asserted that Republic Mortgage should have been aware of the high likelihood of a

market value adjustment to the GIA as the end of the run-off period[1] approached. *Id.* at ¶¶ 29–32. Mr. Allison brought his claim under 29 U.S.C. §§ 1109, 1132(a) to recover losses to the Plan and obtain other relief for the putative class. *Id.* at ¶¶ 59–60.

Republic Mortgage moved to dismiss Mr. Allison's claim for failure to state a claim. Doc. 19; Doc. 20 at 12. The Court denied the motion finding the claim was plausible. Doc. 24. During the litigation, the parties exchanged written discovery. Doc. 39-2 at ¶ 11. The parties filed a joint motion to stay the case pending mediation, Doc. 32, which the Court granted. Doc. 33. The parties participated in mediation and reached a settlement agreement. Doc. 36. The settlement called for certification of a class without any right to opt out pursuant to Federal Rule of Civil Procedure 23(b)(1). Doc. 39 at 15.

The Court granted preliminary approval of the original settlement agreement, Doc. 41, and class members received notice of that settlement. Doc. 50-3 at ¶ 9. Soon after the plaintiff filed a motion for final approval, *see* Doc. 49, the United States Court of Appeals for the Fourth Circuit issued an opinion undermining use of Rule 23(b)(1) in this kind of case. *See* Minute Entry 04/16/2026; Doc. 54; *see generally Trauernicht v. Genworth Fin. Inc.*, 169 F.4th 459 (4th Cir. 2026).

After discussion with the Court, *see* Minute Entry 04/16/2026, the parties engaged in further settlement negotiations and then agreed to amend the original settlement agreement by changing the requested settlement class from a Fed. R. Civ. P. 23(b)(1) class to a Fed. R. Civ. P. 23(b)(3) class. Doc. 39-3 (original settlement agreement); Doc.

---

[1] The run-off period is the phased shut down of Republic Mortgage's mortgage insurance business. Doc. 18 at ¶¶ 21–33.

56-1 (new settlement agreement).[2] The plaintiff moved for preliminary approval, Doc. 55, and on July 1, 2026, the Court granted preliminary approval of class action settlement and certification of the settlement class, approved a class notice procedure, and scheduled the final fairness hearing. Doc. 58. Ninety-seven percent of the class members received notice of the settlement. Doc. 63-3 at ¶ 4. One class member has opted-out. *Id.* at ¶ 5; Doc. 62. No class member has objected. Doc. 63-3 at ¶ 6.

The Court held the final fairness hearing on October 16, 2026. Minute Entry 10/16/2026. Plaintiff's counsel reviewed the class payment procedures and summarized why the settlement was fair and reasonable. Republic Mortgage was present through counsel. *Id.* It confirmed various details provided by plaintiff's counsel and did not object to settlement approval.

## II. Certification of Settlement Class

When a settlement is reached before Rule 23 certification, a class may be certified solely for the purposes of settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 10-CV-10, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011); Fed. R. Civ. P. 23(e). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, plaintiffs "must affirmatively demonstrate their compliance" with Federal Rule of Civil Procedure 23. *1988 Tr. for Allen Child. Dated 8/8/88 v.*

[2] Going forward, for clarity the Court will refer to the new, operative settlement agreement, Doc. 56-1, as the settlement agreement.

*Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up). District courts must rigorously assess the proffered evidence, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), but have "wide discretion" in evaluating whether Rule 23 requirements have been met. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010).

Here, the proposed class for settlement purposes is defined as follows:

> All participants in the Plan whose account balances were reduced by the market value adjustment to the assets invested in the guaranteed interest account investment option in or around January 2024, and their beneficiaries of record and alternate payees to the extent applicable, excluding the fiduciaries of the Plan (and their beneficiaries and alternate payees).

Doc. 56-1 at ¶ 1.47 (settlement agreement); Doc. 58 at ¶ 8 (preliminary approval order).

### A. Threshold Requirements

As a threshold matter, Rule 23 requires the proposed class members to be readily identifiable or ascertainable and the proposed class representative to be a member of the proposed class. *See Peters v. Aetna Inc.*, 2 F.4th 199, 241–42 (4th Cir. 2021) (recognizing an "implicit threshold requirement" that class members be "readily identifiable"); *Amchem*, 521 U.S. at 625–26 ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (cleaned up)); *see also* Fed. R. Civ. P. 23(a). To be readily identifiable, plaintiffs do not need to be able to "identify every class member at the time of certification." *Krakauer v. Dish Network, L.L.C.* (*Krakauer II*), 925 F.3d 643, 658 (4th Cir. 2019) (cleaned up). Rather, a class need only be defined "in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member at some point." *Id.* (cleaned up); *see also Krakauer v. Dish Network L.L.C.* (*Krakauer I*),

311 F.R.D. 384, 393 (M.D.N.C. 2015) ("Ascertainability only requires that a court be able to identify the class members in reference to objective criteria." (cleaned up)).

Here, the class members are readily identifiable. The class is defined using objective criteria: Plan participants whose account balances were reduced by the market value adjustment to the assets invested in the GIA investment option in or around January 2024. *See* Doc. 56-1 at ¶ 1.47; Doc. 58 at ¶ 8. Republic Mortgage's records identify 100 class members. Doc. 50-3 at ¶ 5; Doc. 63-3 at ¶ 4; Doc. 64 at ¶ 4.

Mr. Allison, the representative plaintiff, is part of the class. Doc. 18 at ¶ 6. He participated in the Plan, all of his Plan account was invested in the GIA, and in or around January 2024, his account suffered around a 9% loss. *Id*. The threshold requirements are met.

**B. Rule 23(a)**

Plaintiffs seeking class certification must meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Peters*, 2 F.4th at 241. These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Krakauer II*, 925 F.3d at 654 (cleaned up).

**1. Numerosity**

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "no specified number is needed to maintain a class action, a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (cleaned up).

Here, Republic Mortgage's records identify 100 class members. Doc. 50-3 at ¶ 5; Doc. 63-3 at ¶ 4; Doc. 64 at ¶ 4. Joinder of that many plaintiffs would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is met.

### 2. Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the plaintiff must "demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (cleaned up). "Even a single common question will do," *id.* at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (cleaned up); *see also Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023) ("Commonality requires an entire set of claims depend upon a common contention that is capable of class wide resolution." (cleaned up)).

Here, common questions of law and fact exist. Mr. Allison alleges that Republic Mortgage did not satisfy its duty of prudence in monitoring the Plan's investment in the GIA and timely removing the GIA from the Plan resulting in losses. Doc. 18 at ¶ 59. The common questions include: (1) whether Defendant was a fiduciary, (2) whether Defendant breached its duties to the Plan by failing to conduct an appropriate investigation into the continued retention of the GIA after December 2021, (3) whether Defendant failed to adequately monitor the GIA, and (4) the amount of losses incurred by the market value adjustment to the GIA. The commonality requirement is met.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). This requirement "goes to the heart of a representative parties' ability to represent a class," and the named plaintiff's interest in prosecuting its case "must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). But the claims of the class representative and the claims of the class need not "be perfectly identical or perfectly aligned." *Id.* at 467.

Here, the claims of the named plaintiff, Mr. Allison, are typical of the claims of the class members. His claim, like those of the class members, arises out of the alleged breach of fiduciary duty in monitoring the Plan's GIA investment. Doc. 18 at ¶¶ 58–59. He advances the interests of the absent class members, because he alleges the same injuries and legal harms that any class member would raise. The typicality requirement is met.

### 4. Adequacy of Representation

Rule 23(a) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they

seek to represent," as well as to assess the "competency and conflicts of class counsel." *Amchem*, 521 U.S. at 625, 626 n.20; *see also Wal-Mart*, 564 U.S. at 349 n.5; *Carolina Youth*, 60 F.4th at 780. There are two components to the adequacy requirement: "(1) the interests of the proposed class representatives and class members must coincide; and (2) the plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 308 (D. Md. 2022).

First, there is no meaningful actual or potential conflict of interest between Mr. Allison and the settlement class members. Mr. Allison is a member of the class he seeks to represent, possesses the same interests as the class, alleges that he suffered the same injury as the proposed class members because of Republic Mortgage's ERISA violations, and seeks the same remedies as the class. Doc. 18 at ¶¶ 6, 50, 58–60.

Mr. Allison is seeking a service award of $10,000. Doc. 61. A service award does not create a conflict of interest if the requested amount is not excessive, *see Galloway v. Williams*, No. 19-CV-470, 2020 WL 7482191, at *12 n.11 (E.D. Va. Dec. 18, 2020) (citing William B. Rubenstein, 5 *Newberg & Rubenstein on Class Actions* § 17.18 (5th ed.)), and here it is not.

Second, the legal representatives are adequate. Plaintiff's counsel, including Jennifer Lee and Marc Edelman, have substantial experience and expertise in complex class actions, including ERISA cases. Docs. 39-1, 39-2.

Mr. Allison has served as an adequate lead plaintiff. Plaintiff's counsel is qualified and able to conduct the legal representation. The requirements of Rule 23(a)(4) are met.

**C. Rule 23(b)**

Plaintiffs pursuing a class action must also establish that the case fits into at least one of the three subsections of Rule 23(b). *Comcast Corp.*, 569 U.S. at 33. Mr. Allison relies on Rule 23(b)(3), Doc. 56 at 6–9; Doc. 63 at 17–19, a "common vehicle" used to "seek damages for widespread wrongful conduct." *Krakauer II*, 925 F.3d at 655. Under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *accord Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. All issues need not be common. *Krakauer I*, 311 F.R.D. at 399.

Here, the circumstances of each class member are sufficiently similar, creating predominating questions of law and fact. The claims of all potential settlement class members arise from a single course of conduct about a single investment option that was subject to a single market value adjustment. Doc. 18 at ¶¶ 1, 29–32, 58–60. The same common questions apply to every class member's claim. *See supra* at 7. All or almost all liability issues in this case are common to every member of the proposed class. While damages would be, and are under the settlement, calculated individually, the method of calculation would be and is common. Therefore, common issues predominate over individual issues. A class action is superior to other methods of adjudication because it

can be accomplished fairly and with economies of time, effort, and expense. It will be manageable given the common issues and nature of the matters of concern.

The requirements for class certification under Rule 23(b) are met. *See* Fed. R. Civ. P. 23(b)(3). For purposes of this settlement, the Court will certify the class as defined in the settlement agreement, Doc. 56-1 at ¶ 1.47, certify Mr. Allison as class representative, and appoint plaintiff's counsel as class counsel.

## III. Approval of Final Settlement

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *accord Reed v. Big Water Resort, LLC*, No. 14-CV-1583, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016); William B. Rubenstein, 4 *Newberg & Rubenstein on Class Actions* § 13:44 n.1 (6th ed. 2026) (collecting cases).

A court can only approve a class action settlement "after a hearing" and only if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts in this circuit "bifurcate[] the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 06-CV-400, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)); *accord Roldan v. Bland Landscaping Co.*, No. 20-CV-276, 2022 WL 17824035, at *2 (W.D.N.C. Dec. 19, 2022).

### A. Fairness

The fairness analysis aims "to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (cleaned up). Courts apply a four-factor test to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of" law at issue. *Id.* (cleaned up).

All four fairness factors support approval here. The case has been litigated since November 2024, including dispositive motions practice and a formal all-day mediation.

Although formal fact discovery was somewhat limited, Republic Mortgage provided plaintiff's counsel with thousands of pages of written discovery and counsel conducted its own independent research. Doc. 39-2 at ¶ 11. Plaintiff's counsel testified that before attending mediation, he and his co-counsel "had a thorough understanding of the claims' strengths and vulnerabilities." *Id.* This shows that the relevant discovery needed to develop and understand the key issues had been undertaken.

Mediation occurred after the Court granted the parties joint request to say the case pending mediation. Docs. 32, 33. The parties engaged in settlement negotiations at arm's length. Doc. 39-2 at ¶¶ 10–12. They prepared extensively for mediation, submitted mediation briefs, and participated in an all-day in-person mediation with a retired federal judge who specializes in ERISA cases. *Id.* After a full day of negotiations, the parties reached a settlement in principle that recouped 50% of the Plan's

loss attributable to the market value adjustment of the GIA. *Id.* at ¶ 12. There is no evidence or indication of collusion.

The attorneys representing the class have extensive experience in ERISA class litigation. *Id.* at ¶¶ 1–6; Doc. 39-1 at ¶¶ 1–5.

The Court finds that the final settlement was reached fairly.

**B. Adequacy and Reasonableness**

Courts assess the adequacy of a settlement through the following factors:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*In re Jiffy Lube*, 927 F.2d at 159; *accord 1988 Tr.*, 28 F.4th at 526. Courts examine "the amount of the settlement" and ensure the amount offered "is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *1988 Tr.*, 28 F.4th at 527.

Here, the relevant factors support approval. The proposed settlement awards the class up to 50% of Mr. Allison's calculated class wide damages. Doc. 39-2 at ¶ 12; Doc. 56-1 at ¶ 7.1. Liability was contested, Doc. 63 at 14, and, as the plaintiff acknowledges, there were novel aspects to his claim that made success more uncertain. *Id.* at 13–14. There are obvious costs and risks associated with continuing the litigation. *See, e.g.*, Doc. 39-2 at ¶ 12. Plaintiff's counsel testified without contradiction that 50% recovery in an ERISA breach of fiduciary duty action is "an excellent outcome." *Id.*

Certain types of ERISA litigation settlements, including the one proposed here, require the approval of an independent fiduciary. *See* 29 U.S.C §§ 1106, 1108; Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (Dec. 31, 2003); Amendment to Prohibited Transaction Exemption 2003-39, 75 Fed. Reg. 33830 (June 15, 2010). An independent fiduciary has reviewed the settlement and approved its terms on behalf of the Plan. Doc. 63-2.

The motion for preliminary approval was unopposed, Doc. 55, as is the motion for final approval. Doc. 63. Class notice was provided under Rule 23(c)(2)(a). Doc. 63-3 at ¶ 4; Doc. 64 at ¶ 4. All but three of the class members received notice, Doc. 63-3 at ¶ 4, and there have been no objections. *Id.* at ¶ 6. One class member has opted-out. Doc. 62; Doc. 63-3 at ¶ 5. Class members who do not have active accounts in the Plan and wish to receive their payment as a rollover to a qualified individual retirement account or an eligible employer-sponsored qualified retirement plan had until October 16, 2026, to postmark a completed rollover form. Doc. 63-3 at ¶ 7. The settlement administrator has received 16 non-duplicative rollover forms and will continue to receive and review incoming forms. *Id.* at ¶ 8.

The settlement provides meaningful relief to the class, treats all class members equitably, and avoids the costs, risks, and delay of further litigation. Given the degree of uncertainty over whether Mr. Allison can prevail, the difficulties, delays, and costs associated with pursuing the litigation further, and the benefits to the class members from the amount of the recovery provided by the settlement, the Court finds that the final settlement is fair, adequate, and reasonable.

## IV. Sufficiency of Notice

"In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and withdraw from the class." *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (cleaned up). For classes certified under Rule 23(b)(3), class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The court-approved notice process was reasonable and provided the class members with the best notice practicable under the circumstances. The Claims Administrator sent the approved class notice by first class mail to all 100 class members. Doc. 63-3 at ¶ 4. Five were returned as undeliverable, and the Claims Administrator worked to obtain updated contact information and, when it did, sent the mailing a second time. *Id.* In total, the Claims Administrator successfully mailed notice to 97 of 100 class members. *Id.*

The Claims Administrator has updated the website with the amended settlement agreement, amended notice, and other important documents. RMIC Profit Sharing 401(k) Plan Litigation, https://www.rmicplanclassaction.com (last visited Oct. 29, 2026). The Claims Administrator has also maintained a toll-free telephone helpline. *Id.*

The class notice and the settlement notice informed class members of how to opt-out or object and of the date and time of the final settlement hearing. Doc. 64 at 11–12. The notice was reasonable and satisfies the requirements of due process.

## V. Class Member Opt-Out

One class member out of 100 has opted-out. Doc. 62. The opt-out letter included all the required information and the class member's signature. *Id.* at 1; Doc. 58 at ¶ 19. The opt-out letter was post-marked September 1, 2026. Doc. 62-1. Although the deadline for opting-out was August 31, 2026, the Court finds that the class member timely opted-out of the class action because he likely put the letter in the mail on August 31, 2026, and the one-day delay does not cause any administrative problems.

The settlement fund amount will be lowered by the portion of the settlement that the opt-out class member would have received otherwise. Doc. 56-1 at ¶ 7.1.

## VI. Approval of Plan of Allocation

Like the settlement, the proposed plan of allocation must also be fair, reasonable, and adequate. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009). In this analysis, courts give "significant respect" to the opinion of class counsel, and "the allocation need only have a reasonable and rational basis." *Id.*; *accord Phillips v. Triad Guar. Inc.*, No. 9-CV-71, 2016 WL 1175152, at *4 (M.D.N.C. Mar. 23, 2016).

Here, the plan of allocation, Doc. 56-1 at ¶¶ 8.2.2, 8.4.1–8.5.2, goes well beyond this minimal standard. The allocation is pro rata. Each class member's distribution will be equal to the net settlement amount multiplied by the percentage of assets each class member's plan account had invested in the guaranteed interest account investment option at the time of the market-value adjustment in or around January 2024. No class member objected to the plan. The Court finds the Plan of Allocation is fair, reasonable, and adequate.

## VII. Class Action Fairness Act

Under 28 U.S.C. § 1715(b), within 10 days of a proposed settlement of a class action being filed in court, each defendant must serve upon appropriate state and federal officials notice of the proposed settlement. The settlement administrator sent the required notice for the original settlement on January 9, 2026. Doc. 50-3 at ¶ 4. The settlement administrator sent the amended notice for the amended settlement on July 31, 2026. Doc. 59; Doc. 64 at ¶ 5.

In compliance with the Class Action Fairness Act, the Court enters this order at least 90 days after the amended notices were provided. Doc. 59; 28 U.S.C. § 1715(d).

## VIII. Conclusion

Final certification of the class and approval of the class action settlement is appropriate. The requirements of Rule 23 are met, and settlement is in the best interests of the class members. Final judgment is entered concurrently.

It is **ORDERED and ADJUDGED** that:

1. The plaintiff's motion for final approval of class settlement, Doc. 63, is **GRANTED**.
2. For purposes of this settlement, the Court finally certifies the class defined in the settlement agreement, Doc. 56-1 at ¶ 1.47, certifies Mr. Allison as the class representative, and confirms the appointment of Mr. Allison's counsel as class counsel.
3. The plaintiff and all settlement class members are deemed to have completely released and forever discharged the Released Parties for the

Released Claims. The full terms of the release described in this paragraph are set forth in the settlement and are specifically incorporated herein by reference.

**4.** The Court retains continuing jurisdiction over the Settlement, the administration of the Settlement Agreement, and any disputes arising out of or related to the Settlement or this Order.

**5.** This action and all released claims whether asserted by the class representative or class members are **DISMISSED** with prejudice.

This the 2nd day of November, 2026.

SENIOR UNITED STATES DISTRICT JUDGE