IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MATT ALLISON, as representative of a class of similarly situated persons, and on behalf of the Republic Mortgage Insurance Company and Affiliated Companies Profit Sharing Plan,<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC MORTGAGE INSURANCE COMPANY,<br><br>Defendant. | ) | 1:24-CV-950 |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, Senior District Judge.

In this ERISA class action, the Court has granted final approval of the parties' amended settlement agreement.[1] Class counsel and the plaintiff also move for attorneys' fees, administrative expenses, and a class representative service award. Specifically, they seek $214,450[2] in attorneys' fees; up to $25,000 in costs to the independent fiduciary, Fiduciary Counselors; $11,835 in costs to the settlement administrator, Atticus; and a

[1] The parties amended the original settlement agreement after changing the requested settlement class from a Fed. R. Civ. P. 23(b)(1) class to a Fed. R. Civ. P. 23(b)(3) class in light of the Fourth Circuit's decision in *Trauernicht v. Genworth Financial Inc.*, 169 F.4th 459 (4th Cir. 2026). Doc. 39-3 (original settlement agreement); Doc. 56-1 (new settlement agreement). The Court will refer to the new, operative settlement agreement as the settlement agreement going forward for clarity.

[2] Originally counsel asked for $216,450 in attorneys' fees. Doc. 61 at 1. At the fairness hearing, counsel requested a reduction of $2,000 because the removal of one opt-out class member reduced the total class settlement amount. Doc. 56-1 at ¶ 7.1; Doc. 62.

$10,000 service award for Mr. Allison. Because the requested attorneys' fees, costs, and service award are reasonable considering the relevant factors, the motion will be granted.

## I. Background

The named plaintiff and class representative, Matt Allison, is a former employee of Republic Mortgage Insurance Company who participated in the company's profit-sharing retirement plan. Doc. 18 at ¶¶ 6–7. In his amended complaint, he alleged that Republic Mortgage did not prudently monitor the plan's investment in an insurance company's guaranteed interest account ("GIA"), certified false and misleading statements concerning the risk of loss to plan participants invested in the GIA, and did not take action to avoid a $1.3 million loss of principal in the GIA. *Id.* at ¶¶ 1, 18, 30–42, 58–59.

Following almost a year of litigation, the parties agreed to settle.[3] The settlement amount of up to $650,000[4] gave the class 50% of the plaintiff's calculated classwide damages. Doc. 56-1 at ¶ 7.1; Doc. 61-2 at ¶ 7. The settlement amounts will be distributed to class members by the class administrator from the qualified settlement fund. Doc. 56-1 at ¶¶ 7.2, 8.2. The settlement amount will be allocated to plan participants who have not excluded themselves, in proportion to their investment in the GIA and paid through their plan account balances. *Id.* at ¶¶ 8.2.2, 8.4, 8.5. After granting

[3] The order granting final approval of the class settlement provides a more comprehensive procedural history. *See* Doc. 66.

[4] The settlement amount is $650,000 minus "the portion of the Settlement to which any person who opts out of the Settlement would otherwise have received." Doc. 56-1 at ¶ 7.1. One person opted-out. *See* Doc. 62.

preliminary approval, Doc. 58, and holding a fairness hearing, Minute Entry 10/16/2026, the Court gave final approval to the settlement. Doc. 66.

Class counsel and the plaintiff seek an award of $214,450 in attorneys' fees. Doc. 61-1 at 6; note 2 *supra*. This represents one-third of the settlement amount. Doc. 61-1 at 6. They also seek up to $25,000 in costs to the independent fiduciary, Fiduciary Counselors; $11,835 in costs to the settlement administrator, Atticus; and a $10,000 service award for Mr. Allison. *Id.* at 2–3. The defendant has not opposed the motion. Class members were notified that class counsel could seek an attorney's fee of up to one-third, Doc. 56-1 at 34, and no class member objected to the settlement or expressed concerns about the fee provision.

## II. Attorneys' Fees

### a. Legal Standard

In a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts calculate attorneys' fees in class actions using either the "lodestar" method or the "percentage of fund" method. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009). In a common fund case, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Fourth Circuit does not require the use of the percentage of fund method, but district courts in this circuit overwhelmingly apply it. *See Phillips v. Triad Guar. Inc.*, No. 09-CV-71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); *see also Jones*, 601 F. Supp. 2d at 758–59 (collecting cases).

To determine the reasonableness of the fee award, courts assess the factors identified in *Barber v. Kimbrell's, Inc.* or a variant of those factors. *See* 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Phillips*, 2016 WL 2636289, at *3–4. The *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d at 226 n.28 (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)). Courts do not apply these factors in "a formulaic way" because each case is different. *Feinberg v. T. Rowe Price Grp. Inc.*, 610 F. Supp. 3d 758, 771 (D. Md. 2022) (cleaned up).

Courts often use the lodestar method to cross-check the reasonableness of a percentage fee, *Jones*, 601 F. Supp. 2d at 759–60 (collecting cases), comparing the requested contingent fee award against a fee calculated based on hours spent at prevailing market rates. *See Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014). "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Id.* To determine the lodestar, courts multiply the reasonable hourly rate for each attorney by the number of hours

reasonably expended. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). A lodestar multiplier is then calculated by dividing the requested fee by the lodestar. *See generally* William Rubenstein, 5 Newberg & Rubenstein on Class Actions § 15:85 (6th ed. 2026) (giving the example of a $25 million requested fee divided by a $10 million lodestar, resulting in a multiplier of 2.5).

When courts use the lodestar method only as a cross-check, they need not "exhaustively scrutinize" the hours documented by counsel and "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (cleaned up). Usually, a reasonable rate is calculated by looking at the local market, *see Burrs v. United Techs. Corp*, No. 18-CV-491, 2019 WL 1430258, at *1 (M.D.N.C. Mar. 29, 2019), but a national market rate is appropriate for matters involving complex issues requiring specialized expertise, such as ERISA class actions. *See Kruger v. Novant Health, Inc.*, No. 14-CV-208, 2016 WL 6769066, at *4 (M.D.N.C. Sep. 29, 2016).

**b. Analysis**

The Court has considered the twelve *Barber* factors and finds that the request for a fee of $214,450, reflecting one-third of the settlement fund, is reasonable. Class counsel has spent over 135 hours of attorney and legal professional time on this matter.[5] Doc. 61-2 at ¶ 11; Doc. 61-3 at ¶ 19. ERISA litigation is a "rapidly evolving and demanding area

[5] Counsel also estimated that they would spend an additional 40 hours on the case after the declarations were filed. Doc. 61-2 at ¶ 10; Doc. 61-3 at ¶¶ 18, 20. That is reasonable, given the work remaining to be done after the motion was filed, such as filing the motion for final approval of the settlement and attending the fairness hearing.

of law" in which "new precedents are frequently issued." *In re Wachovia Corp. ERISA Litig.*, No. 09-CV-262, 2011 WL 5037183, at *4 (W.D.N.C. Oct. 24, 2011) (cleaned up). This, and the "significant risk of nonpayment" in ERISA matters generally, *see Kruger*, 2016 WL 6769066, at *4, tend to indicate that recovery requires navigating novel issues and applying specialized skills. Class counsel credibly testifies that taking on this complex class action represented a significant opportunity cost. Doc. 61-2 at ¶ 5; Doc. 61-3 at ¶ 5.

A one-third fee is consistent with the usual compensation for work done in complex ERISA matters such as this and reflects the customary fee for like work. *See, e.g.*, *Kruger*, 2016 WL 6769066, at *2. Class counsel took this case on a contingency fee basis, Doc. 61-3 at ¶ 23, so the fee award aligns with their expectations at the outset of the litigation. Class counsel obtained a meaningful degree of success on behalf of the class. The settlement fund amounts to 50% of the plaintiff's estimated classwide damages. Doc. 61-2 at ¶ 7.

Class counsel has skill and experience in litigating sophisticated ERISA class actions. *See* Doc. 48-2 at ¶¶ 16–17; Doc. 39-1 at p. 1–3 ¶¶ 1–5; Doc. 39-2 at ¶¶ 1–6. To obtain a successful result for the class here, class counsel required a deep knowledge of ERISA and how retirement plans work. A one-third fee reflects a reasonable attorneys' fee in this matter, which involved complex areas of law and less than certain odds of recovery.

The lodestar cross-check also supports the reasonableness of the requested fee. Class counsel has submitted evidence that in this case they spent 87.78 hours of attorney

time that would be billed at $850, 21.1 hours of attorney time that would be billed at $750, and 27 hours of non-attorney professional time that would be billed at $258. Doc. 61-2 at ¶ 11 (table); Doc. 61-3 at ¶ 19 (table).[6] If they were to have billed for their services they would have billed a total of $97,404. Doc. 61-2 at ¶ 11 (table); Doc. 61-3 at ¶ 19 (table).[7] When adjusted for inflation, those rates are in line with rates approved in similar cases in this district. *See Kruger*, 2016 WL 6769066, at *4; *see also Goldberger*, 209 F.3d at 50 (explaining that less scrutiny of the lodestar is necessary when it is only used as a cross-check).

The lodestar amount, using these hours and rates, is $97,404. Doc. 61-2 at ¶ 11 (table); Doc. 61-3 at ¶ 19 (table). Dividing the requested fee of $214,450 by the lodestar amount gives a multiplier of approximately 2.2. In this context, that is a relatively low multiplier, showing the requested fee is not excessive. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."). The lodestar cross-check confirms that the requested attorneys' fees are reasonable.

## III. Costs

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). "The prevailing view is that

---

[6] Counsel also estimates that they will spend an additional 40 hours on the case. Doc. 61-2 at ¶ 10; Doc. 61-3 at ¶¶ 18, 20. That 40 hours is not included in the lodestar calculation.

[7] The total amount in the table in Ms. Lee's declaration is off by $100, and the actual total equals $67,654. Doc. 61-3 at ¶ 19 (table).

expenses are awarded in addition to the fee percentage." *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-CV-187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007) (cleaned up). Reimbursable expenses include expert fees and settlement costs. Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed. 2026); *Phillips*, 2016 WL 2636289, at *9; *Spano v. Boeing Co.*, No. 06-CV-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016). Other courts have approved costs for an independent fiduciary which is required by ERISA to review and authorize the settlement. *See e.g., Coppel v. SeaWorld Parks & Ent., Inc.*, No. 21-CV-1430, 2025 WL 2617246, at *9 (S.D. Cal. Sep. 10, 2025) (citing cases).

Class counsel has submitted evidence detailing the work of the service administrator, Atticus. Doc. 61-3 at ¶¶ 28–29, 31. Its work includes sending out class notice twice, creating the settlement website and telephone support line, monitoring mail, and researching ways to contact class members. *Id.* After final settlement approval, it will calculate payments to class members and distribute those payments. *Id.* at ¶ 32. Atticus will charge $11,835 for those services. *Id.* at ¶ 33.

Class counsel has submitted evidence that the independent fiduciary, Fiduciary Counselors, will charge up to $25,000 for its services which include review, an analysis report, and appearance at the final fairness hearing (if required). *Id.* at ¶ 35. Costs of the settlement administrator and independent fiduciary are included in the settlement agreement as administrative expenses. Doc. 56-1 at ¶¶ 1.3, 2.1.4, 2.2.3.1, 8.1.

The Court has reviewed the costs of these service providers and the supporting documentation and finds that the expenses are reasonable.

## IV. Service Award

At the end of a successful class action, it is common for trial courts to compensate class representatives for some of the time and effort they invested to benefit the class. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Mr. Allison requests a service award of $10,000 in recognition of his time, effort, and contributions to the success of the case. Doc. 61 at 1.

Class counsel testifies that Mr. Allison contacted counsel to start the litigation, provided documents and information to develop the case, continued communication with counsel, reviewed allegations in both complaints, took off work and flew to Minneapolis at his own expense to participate in the mediation, and discussed and reviewed the settlement agreement. Doc. 61-2 at ¶ 8; Doc. 61-3 at ¶ 24. The requested award is small relative to the amount of the class recovery, reasonable based on Mr. Allison's expenses and work on behalf of the class, and consistent with other service awards approved in this district and throughout the Fourth Circuit. *See In re Novant Health, Inc.*, No. 22-CV-697, 2024 WL 3028443, at *13 (M.D.N.C. June 17, 2024) (collecting cases).

## V. Conclusion

The Court finds that the plaintiff's unopposed motion for attorneys' fees, costs, and a service award for the named plaintiff is well-supported and reasonable.

Accordingly, it is **ORDERED** that:

1. The plaintiff's motion for attorneys' fees, costs, and a service award, Doc. 61, is **GRANTED**.

2. Class counsel is entitled to attorneys' fees in the amount of $214,450, to be paid from the settlement fund.

3. A cost of up to $25,000 shall be paid to the independent fiduciary, Fiduciary Counselors, from the settlement fund.

4. A cost of $11,835 shall be paid to the settlement administrator, Atticus, from the settlement fund.

5. A service award of $10,000 shall be paid to the named plaintiff, Matt Allison, from the settlement fund.

This the 2nd day of November, 2026.

SENIOR UNITED STATES DISTRICT JUDGE